2010 Ark. 418

**Stark LIGON, Executive Director of the Supreme Court Committee on Professional Conduct, Petitioner,**

v.

**Oscar Amos STILLEY, Respondent.**

No. 08–73.

Supreme Court of Arkansas.

Nov. 4, 2010.

Supreme Court Committee on Professional Conduct, by Stark Ligon, Executive Director, Little Rock, for petitioner.

Oscar Stilley, Fort Smith, pro se.

RONALD L. SHEFFIELD, Justice.

Stark Ligon, Executive Director of the Supreme Court Committee on Professional Conduct ("the Committee"), brings this original action to disbar attorney Oscar Amos Stilley, Ark. Bar No. 91096. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(5) (2010). We adopt the findings of fact and conclusions of law entered by the special judge and agree that the appropriate sanction is disbarment.[1]

### I. *Procedural History*

On October 29, 2004, then Circuit Judge James R. Marschewski referred Stilley to the Committee for possible ethics violations (CPC No.2006–067, "the Marschewski Complaint"). On December 14, 2007, after hearing the matter, Panel B of the Committee voted to initiate disbarment proceedings against Stilley. The panel members also voted to place him on interim suspension pending the conclusion of such proceedings. An order of suspension was filed with the clerk of this court on December 27, 2007.

Ligon subsequently filed a petition for disbarment on January 16, 2008, and alleged twenty-eight violations of the Rules of Professional Conduct ("Rules"). The petition raised two additional allegations related to Stilley's "overall fitness" to hold a law license. Stilley responded to the petition on March 3, 2008.

---

1. The findings of fact and conclusions of law, entered by the special judge on April 22, 2009, are attached as an appendix to this opinion. The appendix is attached to the official electronically reported opinion and the opinion on file in the Supreme Court Clerk's Office.

By per curiam order on April 15, 2008, we appointed Special Judge John Lineberger to hear the disbarment petition and to provide the court with findings of fact, conclusions of law, and recommendation of an appropriate sanction. *Ligon v. Stilley,* 373 Ark. App'x 675, 283 S.W.3d 185 (2008) (per curiam).

On June 20, 2008, Panel B authorized disbarment proceedings related to a subsequent complaint filed against Stilley by Circuit Judge Stephen Tabor (CPC 2007–062, "the Tabor Complaint"). On June 27, 2008, Ligon filed a first amended/supplement petition for disbarment based on the Tabor Complaint. The amended petition raised nine additional counts for disbarment and ten additional allegations related to Stilley's fitness to hold a law license.

Throughout the proceedings before the special judge, Stilley filed numerous motions, which will be addressed in this opinion as they are relevant. On April 22, 2009, following a three-day hearing on December 8, 9, and 10, 2008, at which he heard testimony and received evidence, the special judge entered findings of fact and conclusions of law. The order was one hundred and nineteen pages in length and found that Ligon had met his burden of proof with respect to the thirty-two counts charged in the petition for disbarment and the amended petition for disbarment.

On May 21, 2009, the special judge heard testimony and received evidence relevant to a determination of the appropriate sanction. On August 6, 2009, an order recommending disbarment was filed. We are now considering the recommendation of disbarment.

## II. *Standard of Review*

The authority to regulate the practice of law arises from the Arkansas Constitution, specifically amendment 28 and amendment 80, section 4. The power to regulate the practice of law is also an inherent power of the courts. *See, e.g., Ligon v. McCullough,* 2009 Ark. 165A, 303 S.W.3d 78; *see also In re Anderson,* 312 Ark. 447, 851 S.W.2d 408 (1993); *Hurst v. Bar Rules Comm.,* 202 Ark. 1101, 155 S.W.2d 697 (1941); *Beene v. State,* 22 Ark. 149 (1860). The Procedures Regulating Professional Conduct ("Procedures") were promulgated by this court and govern attorney discipline. *See* Ark. Sup.Ct. P. Regulating Prof'l Conduct § 1(A) (2010) ("These Procedures are promulgated for the purpose of regulating the professional conduct of attorneys at law and shall apply to complaints filed and formal complaints instituted against attorneys.").

Under section 13 of the Procedures, the process for a disbarment action, as relevant to the instant matter, is as follows:

(A) An action for disbarment shall be filed as an original action with the Clerk of the Supreme Court. Upon such filing, the Arkansas Supreme Court, pursuant to Amendment 28 of the Arkansas Constitution, shall assign a special judge to preside over the disbarment proceedings.... In disbarment suits, the action shall proceed as an action between the Executive Director and the respondent. Proceedings shall be held in compliance with the Arkansas Rules of Civil Procedure and the Arkansas Rules of Evidence, and trial shall be had without a jury.

(B) The judge shall first hear all evidence relevant to the alleged misconduct and shall then make a determination as to whether the allegations have been proven. Upon a finding of misconduct, the judge shall then hear all evidence relevant to an appropriate sanction to be imposed, including evidence related to the factors listed in Section 19 and the aggravating and mitigating factors set out in the American Bar Association's

Model Standards for Imposing Lawyer Sanctions, §§ 9.22 and 9.32 (1992). *See Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998).

(C) The judge shall make findings of fact and conclusions of law with respect to the alleged misconduct of the respondent attorney and the imposition of sanctions, including the factors discussed in subsection 13(B).... The judge shall make a recommendation as to the appropriate sanction from those set out in Section 17(D). ·

(D) The findings of fact, conclusions of law, and recommendation of an appropriate sanction shall be filed with the Clerk of the Supreme Court along with a transcript and the record of the proceedings. Upon the filing, the parties shall file briefs as in other cases. The findings of fact shall be accepted by the Supreme Court unless clearly erroneous. The Supreme Court shall impose the appropriate sanction, if any, as the evidence may warrant. In imposing the sanction of suspension, the attorney may be suspended for a period not exceeding five (5) years. There is no appeal from the decision of the Supreme Court except as may be available under federal law.

*Id.* § 13.

Section 1(C) of the Procedures states that attorney disciplinary proceedings are neither civil nor criminal in nature but are sui generis, meaning of their own kind. *See id.* § 1(C); *see also Ligon v. Dunklin*, 368 Ark. 443, 247 S.W.3d 498 (2007). We will accept the judge's findings of fact unless they are clearly erroneous, and we impose the appropriate sanction as warranted by the evidence. Ark. Sup.Ct. P. Regulating Prof'l Conduct § 1(C); *see also McCullough*, 2009 Ark. 165A, 303 S.W.3d 78. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *McCullough*, 2009 Ark. 165A, 303 S.W.3d 78; *see also Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007).

Because the special judge's findings are not clearly erroneous, we adopt them in full. Further, we agree with the special judge that disbarment is the appropriate sanction given the serious and widespread nature of Stilley's professional misconduct.

### III. *Evidence Supports the Special Judge's Findings and Recommendation*

For his first point on appeal, Stilley contends that there was a "complete and total absence of evidence in support of [Ligon's] claims." Stilley urges that the special judge erred in recommending disbarment under the circumstances. Ligon responds that Stilley has failed "to address the overwhelming factual evidence in the record against him and the Special Judge's carefully reasoned and fully-supported findings as to guilt on all thirty-two charges of misconduct." Ligon argues instead that Stilley's arguments relate more to procedure.

### A. Underlying Facts

The facts giving rise to this disbarment proceeding are complex and have been set forth in multiple previous cases. The essence of the charges is that Stilley attempted to relitigate issues that had previously been decided by filing multiple lawsuits in state and federal courts. In doing so, it is alleged that Stilley was disrespectful toward the courts and toward individual judges; was repeatedly sanctioned under Arkansas Rule of Civil Procedure 11; threatened to report a circuit

judge and opposing counsel to the prosecuting attorney's office and to the professional misconduct committee if they did not comply with his demands; personally sued various judges and justices after they ruled against him; withheld material information from the court; directly violated court orders; and repeatedly attempted to be admitted to practice before federal courts without disclosing his disciplinary history in Arkansas.

In 2002, Stilley filed a complaint in the Sebastian County Circuit Court on behalf of his client, John Parker, against the following parties: the county judge; the county collector; and the county treasurer; the Fort Smith School District; Westark Community College, a/k/a University of Arkansas–Fort Smith; the City of Fort Smith; and Sebastian County. The complaint alleged that Act 758 of 1995 violated amendment 59 to the Arkansas Constitution and that the defendants were imposing illegal taxes on the plaintiff and other similarly-situated taxpayers. Circuit Judge Marschewski granted the defendants' motion for summary judgment on grounds that res judicata barred the lawsuit because the claims raised were litigated in *Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213 (2000). Judge Marschewski also imposed Rule 11 sanctions against Stilley after finding that he was the attorney in the *Elzea* case and had, therefore, previously filed an identical complaint that resulted in summary judgment and was affirmed on appeal. Parker appealed, and this court affirmed the grant of summary judgment and the Rule 11 sanctions in *Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003).

In July 2004, the Fort Smith School District, one of the defendants in *Parker*, filed a notice of noncompliance in circuit court, and in August, it filed a motion to enforce Rule 11 sanctions. A hearing was held on September 22, 2004, at which Stilley was directed by the court to provide information regarding his finances in order to determine if he was financially able to comply with the Rule 11 sanctions. Stilley then filed a complaint in federal court against Judge Marschewski, opposing counsel, and the Justices of the Arkansas Supreme Court, alleging that his due-process and equal-protection rights were violated and that Judge Marschewski and the Arkansas Supreme Court Justices were biased against him.[2]

In response to a motion for contempt filed in circuit court regarding the sanctions in the *Parker v. Perry* matter, Stilley sent a letter to Judge Marschewski wherein he alleged that the sanction order was illegal. Stilley stated that he "would prefer not to report [the judge's] conduct to the Committee on Professional Conduct or to the judicial authorities," asked Judge Marschewski to "provide [him] with a basis for not filing a report with the appropriate professional authorities for judges and lawyers," and concluded that if he did not respond, Stilley would "also file a criminal complaint with the Sebastian County Prosecutor's office."[3]

---

2. This complaint was dismissed by the federal district court, and the judge imposed Rule 11 sanctions against Stilley, finding that "Mr. Stilley has pursued, and continues to pursue, this lawsuit for improper purposes." *Stilley v. Marschewski*, CIV–04–2225 GTE (W.Dist. Ark. May 18, 2005). Stilley appealed the imposition of sanctions, and the Eighth Circuit Court of Appeals affirmed. *Stilley v. Marschewski*, 182 Fed.Appx. 611 (8th Cir.2006).

3. Stilley filed a complaint against Judge Marschewski with the Arkansas Judicial Discipline and Disability Commission and the Supreme Court Committee on Professional Conduct, both of which were dismissed. Stilley also filled out a warrant information sheet with the Sebastian County Prosecuting Attorney; a warrant was not issued.

Stilley sent a similar letter to James M. "Mitch" Llewellyn, counsel for the Fort Smith

Judge Marschewski forwarded Stilley's letter to the Committee and asked it to "take whatever action [it] think[s] is necessary." Judge Marschewski also forwarded the letter to the Judicial Discipline and Disability Commission to take any appropriate action against him. In closing, Judge Marschewski stated: "I do not mind Mr. Stilley filing any complaint against me that he cares to file, but, what I do object to is being threatened with an ethics complaint or a criminal complaint unless I do what he thinks is appropriate." This letter caused the Committee to open an investigation in the Marschewski Complaint, which led to the filing of the initial petition for disbarment.[4]

Judge Marschewski held another hearing on the motion for contempt on January 14, 2005, after which he found Stilley in contempt and entered an order directing him to serve thirty days in jail and to pay a fine of $50 per day until he complied with the court's order. On March 2, 2007, Stilley filed a motion for stay of the contempt order and for writ of habeas corpus in federal court. On March 14, 2007, Judge Stephen Tabor, as successor to Judge Marschewski, held a hearing on the *Parker* defendants' amended motion to enforce sanctions. Judge Tabor told Stilley that the matters which led to the motion to enforce sanctions would not be relitigated. Judge Tabor also informed Stilley that he would be unavailable for a few days due to a family emergency and would issue his ruling on the motion to enforce sanctions at a hearing on March 26, 2007.

On March 5, 2007, in violation of Judge Tabor's directive not to relitigate issues, Stilley issued subpoenas to take the deposition of numerous individuals, including Judge Marschewski. Judge Tabor then ordered that Stilley be jailed until he complied with Judge Marschewski's order and subsequently held him in contempt for failing to comply with his directives and sentenced him to thirty additional days in jail. On May 8, 2007, Judge Tabor also referred Stilley to the Committee. His referral was the Tabor Complaint and led to the amended petition for disbarment.

Another instance in which Stilley attempted to litigate issues that had been previously decided involved his representation of his client Buck Jones. In 2002, Stilley entered an appearance on behalf of Jones and filed a pleading styled as a "Cross Claim Complaint," in which he raised certain constitutional claims. The circuit judge dismissed the pleading, finding that an opinion against Jones had already been entered and that the pleading filed by Stilley was a compulsory counterclaim that should have been raised during the trial. This court affirmed. *Jones v. Double "D" Props., Inc.,* 352 Ark. 39, 98 S.W.3d 405 (2003) (*Jones I*). After the mandate issued in *Jones I,* the prevailing party, Double "D" Properties, Inc., filed a petition asking the circuit court to release funds posted as a supersedeas bond by Jones and his wife, Robbie Jones. Stilley, acting on behalf of the Joneses, responded and filed a motion seeking permission to file an illegal-exaction complaint. The circuit court denied the motion in reliance on *Jones I,* and this court again affirmed.

---

Public School District, and counsel for the University of Arkansas at Fort Smith, S. Walton Maurras. When neither responded, Stilley filed grievances against each with the Committee on Professional Conduct. The complaints were likewise dismissed.

4. Stilley subsequently filed a motion asking Judge Marschewski to recuse, which was denied. After filing various other pleadings, Stilley appealed the judge's decision not to recuse to this court, and we affirmed. *Stilley v. Fort Smith Sch. Dist.,* 367 Ark. 193, 238 S.W.3d 902 (2006).

*Jones v. Double "D" Props., Inc.,* 357 Ark. 148, 161 S.W.3d 839 (2004) (*Jones II*).

On October 5, 2004, the Joneses filed a "pro se" complaint in federal court, naming Double "D" Properties, Inc.; the Arkansas State Land Commissioner; the Sebastian County Judge; the Sebastian County Collector; the Sebastian County Treasurer, the Fort Smith School Board members; the University of Arkansas at Fort Smith and its attorney; the City of Fort Smith; and each Justice of the Arkansas Supreme Court as defendants ("the federal Jones case"). The complaint raised the same claims that had been decided in *Jones I* and *Jones II.* In addition, it alleged that the Justices of the Arkansas Supreme Court deprived the Joneses of due process and "a competent tribunal" as a result of "passion and prejudice . . . against Oscar Stilley."

In a subsequent deposition, Buck Jones stated that Stilley had been his attorney when the federal Jones complaint was filed and that Stilley typed and otherwise prepared the complaint. At a contempt hearing in the Sebastian County Circuit Court in January 2005, Stilley was asked about his participation in the preparation of the pleadings in the federal Jones case. He responded that he typed a lot of the documents and that "to his knowledge" Buck Jones did not type any part of the complaint. Stilley finally concluded that he "assisted Mr. Jones materially in the preparation of that complaint."

Finally, in a previous proceeding before the Committee, Stilley was found to have violated four provisions of the Rules, and a six-month suspension of his law license was recommended. This court affirmed in *Stilley v. Supreme Court Committee on Professional* |₁₁*Conduct,* 370 Ark. 294, 259 S.W.3d 395 (2007). The suspension was stayed during the pendency of Stilley's petition for writ of certiorari to the United States Supreme Court, which was subsequently denied. *Stilley v. Supreme Court of Ark. Comm. on Prof'l Conduct,* 552 U.S. 1184, 128 S.Ct. 1248, 170 L.Ed.2d 67 (2008). Despite this history, Stilley filed multiple petitions for admission to practice pro hac vice in various federal courts without disclosing his disciplinary record in Arkansas. Furthermore, when his record was brought to the attention of the federal courts, Stilley repeatedly attempted to relitigate the issues giving rise to his state disciplinary sanctions.

### B. Charges

In the initial petition for disbarment, Ligon charged Stilley with the following:

- One violation of Rule 3.1 of the Arkansas Rules of Professional Conduct, which states that

 [a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or a respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

- One violation of Rule 3.3(a), which states that

 (a) [a] lawyer shall not knowingly:

 (1) make a false statement of fact or law to a tribunal; or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

 (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client

and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to [12]know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

- Eleven violations of Rule 3.4(c), which states that "[a] lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

- Ten violations of Rule 8.4(d), which states that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

■ The Rule 3.1 violation arose from an allegation that Stilley assisted the Joneses in the federal Jones case in bringing a frivolous claim against the named defendants, including then sitting justices of this court. The violation of Rule 3.3(a)(1) stemmed from a contempt hearing in the Sebastian County Circuit Court wherein Stilley was asked about his role in the preparation of the pleadings in the federal Jones case. According to Ligon, Stilley's responses "demonstrated a lack of candor, even a false statement, to the tribunal." In counts three through thirteen, Ligon cited instances of language included in the federal Jones case pleadings that he

alleged were "intemperate, contemptuous, and disrespectful" toward the court. Ligon argued that this language violated Rule 3.4(c) because it constituted "a breach of the obligation of [Stilley's] oath of office as an attorney-at-law, due to his general tone of disrespect for the attorney code of ethics." [5]

Five of the Rule 8.4(d) violations arose from allegations that Stilley threatened a circuit [13]judge and two attorneys with criminal and disciplinary actions in "an attempt to coerce a favorable result in a civil court action." The petition for disbarment further alleged that Rule 8.4(d) was violated where Stilley was sanctioned under Rule 11 for filing a complaint that was barred by res judicata; violated Rule 11 where he filed a lawsuit in federal court that was barred by several legal doctrines and for which he had previously been sanctioned; failed to comply with an order for sanctions entered in the Sebastian County Circuit Court; brought a lawsuit personally against various Arkansas judges on frivolous claims; and brought a lawsuit against then circuit judge Marschewski and the University of Arkansas–Fort Smith for an improper purpose.

Finally, Ligon urged that the previously affirmed six-month suspension of Stilley's law license, *see Stilley v. Supreme Court Committee on Professional Conduct,* 370 Ark. 294, 259 S.W.3d 395 (2007), and allegations in a pending professional-misconduct case were relevant to his overall fitness to hold a law license.

In the amended petition for disbarment, Ligon brought the following additional nine charges:

---

5. We express some concern about these charges because it is unclear whether an attorney can be sanctioned for violating his "lawyer's oath." However, Stilley does not raise this as an argument on appeal, and we will not address issues that are not argued. *See, e.g., Gatzke v. Weiss,* 375 Ark. 207, 289 S.W.3d 455 (2008).

- One violation of Rule 3.4(c), which states that "[a] lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."
- One violation of Rule 4.4(a), which states that, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
- One violation of Rule 8.4(d), which states that "[i]t is professional misconduct for a [14]lawyer to engage in conduct that is prejudicial to the administration of justice."
- Three violations of Rule 3.3(a)(1), which states that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal; or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."
- Three violations of Rule 8.4(c), which states that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The Rule 3.4(c) and Rule 4.4(a) violations arose from an allegation that Stilley had subpoenas and deposition notices issued in direct violation of a circuit judge's directive. The Rule 8.4(d) violation resulted from an allegation that Stilley accused Judge Marschewski of lying during a legal proceeding, especially where Stilley made the same accusation in a previous case that was decided against Stilley. According to the amended petition for disbarment, Stilley violated Rule 3.3(a)(1) and Rule 8.4(c) on multiple occasions by filing petitions for admission to practice pro hac vice in federal courts without disclosing his prior disciplinary history in Arkansas. Ligon's amended petition also included ten specific allegations Stilley had engaged in conduct relevant to his fitness to hold a law license, when he petitioned for admission to practice pro hac vice in federal courts. Ligon asserted that, in these cases, Stilley attempted to relitigate his Arkansas professional misconduct proceedings in federal courts throughout the country.

## C. Special Judge's Findings

In his findings of fact and conclusions of law, the special judge reviewed extensively the factual allegations and charges brought against Stilley. He concluded, after referencing the exhibits introduced in support of the charges, that Ligon had met his burden on all thirty-two [15]charges of misconduct. Following the hearing on sanctions, the special judge concluded that twenty of the counts rose to the level of "serious misconduct," as defined in section 17(B) of the Procedures:

Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

Ark. Sup.Ct. P. Regulating. Prof'l Conduct § 17(B).[6] He specifically found that "[f]or more than nine years Stilley has deliberately and without justification engaged in a course of conduct inconsistent with standards of professional conduct required by attorneys practicing in this state." The special judge noted that "Stilley has an extensive track record" and that his "unethical conduct has not been isolated or infrequent."

The judge then looked to the factors to be considered in imposing sanctions, listed in section 19 of the Procedures:

In addition to any other considerations permitted by these Procedures, a panel of the Committee, in imposing any sanctions, shall consider:

A. The nature and degree of the misconduct for which the lawyer is being sanctioned.

B. The seriousness and circumstances surrounding the misconduct.

C. The loss or damage to clients.

D. The damage to the profession.

E. The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

F. The profit to the lawyer.

G. The avoidance of repetition.

H. Whether the misconduct was deliberate, intentional or negligent.

I. The deterrent effect on others.

J. The maintenance of respect for the legal profession.

K. The conduct of the lawyer during the course of the Committee action.

L. The lawyer's prior disciplinary record, to include warnings.

M. Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

*Id.* § 19. The special judge also noted the aggravating and mitigating factors as provided in *Wilson v. Neal,* 341 Ark. 282, 16 S.W.3d 228 (2000). He concluded that the factors in section 19(A), (B), (C), (D), (E), (G), (H), (I), (J), (K), and (L) were relevant to the sanction and that there was evidence of ten aggravating factors.[7] The special judge recommended disbarment "[b]ecause of Stilley's unwillingness or inability to acknowledge that his conduct has not met ethical standards; his failure to disclose his violations when required; and his continued pattern of failing to abide by Court Rules and ethical guidelines."

### D. Stilley's Argument

Before this court, Stilley first seems to argue that the findings of fact and conclusions of law were erroneous because Ligon did not comply with the special judge's request that he include an introduction or general statement of the facts in his proposed findings of fact and conclusions of law. This argument is without merit. We do not review any proposed findings of fact and conclusions of law as presented to the special judge by Ligon or Stilley. Rather, our review is from the

---

6. The counts rising to the level of serious misconduct were: 1, 2, 4, 6, 7, 10, 11, 13, 14, 15, 16, 19, 22, 25, 26, 27, 29, 30, 31, and 32. The special judge specifically found that subsections 17(B)(2), (3), (4), and (5) applied.

7. The judge found that Stilley had not presented any evidence of mitigating factors.

findings of fact and conclusions of law as entered by the special judge. Ark. Sup.Ct. P. Regulating Prof'l Conduct § 13(D).

As a related argument, Stilley contends that Ligon failed to provide, in his proposed findings of fact and conclusions of law, any "citation to the *evidence* in the case." Rather, according to Stilley, Ligon relied on accusations, which were insufficient to meet his burden of proof for disbarment. This argument reflects a fundamental misunderstanding on Stilley's part about the nature of evidence. This error is evident in the following sentence from his brief: "[Ligon] did in fact recite various parts of the 'petition' and 'supplemental petition' for disbarment, *along with exhibits to the same.*" (Emphasis added.) Later in his brief, Stilley notes that Ligon "presented but one witness in his case in chief on liability, namely Respondent Oscar Stilley."

The implication of these two sentences, taken together, is that Ligon was required to prove the charges brought in his petition for disbarment with live witness testimony. However, there is no such requirement in the Procedures. Ligon chose to rely instead on documentary evidence, submitted to the special judge in the form of exhibits.[8] It is clear that evidence includes documents as well as witness testimony. *See, e.g., Black's Law Dictionary* 635 (9th ed.2009) (defining evidence as "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact").

During the evidentiary hearing and the hearing on sanctions, Stilley objected to the introduction of most of the exhibits admitted by the special judge. However, he does not argue to this court that the special judge erred in admitting the above-referenced exhibits. Therefore, he has abandoned any argument as to the admissibility of the exhibits. Instead, Stilley contends that there was a "complete and total absence of evidence in support of [Ligon's] claims." However, the special judge's orders reflect that he relied on the exhibits admitted during the proceedings. It is clear that there was evidence on which the judge based his findings.

Finally, while Stilley may disagree about whether the exhibits admitted by Ligon constitute sufficient evidence to support the special judge's specific findings, he has not engaged in any meaningful analysis on this issue. In other disbarment cases, we have refused to engage in a comprehensive review of the findings of fact where the respondent failed to specifically challenge or contest them. *See, e.g., Ligon v. Walker,* 2009 Ark. 136, 297 S.W.3d 1.

Therefore, we adopt the special judge's findings of fact and find that Stilley violated the Rules as set forth in the petition and amended petition for disbarment. For years Stilley has refused to accept the finality of decisions rendered by courts of competent jurisdiction. Instead, he has consistently engaged in conduct intended to harass opposing counsel and judges with whom he disagrees. In so doing, he has wasted vast amounts of time and judicial resources. He has also been unwilling to obey direct orders of the court and has withheld material information from state and federal courts. We are mindful of the gravity of Stilley's actions as well as the

---

**8.** There were seventeen exhibits submitted with the petition for disbarment; ten exhibits submitted with the amended petition for disbarment; two-hundred and four exhibits admitted during the evidentiary hearing on December 8–10, 2008; and thirty-eight exhibits admitted at the sanctions hearing on May 21, 2009. In addition, five witnesses testified at the sanctions hearing.

cumulative nature of his violations. Thus, we likewise agree with the special judge that Stilley's actions constitute serious misconduct and that disbarment is the appropriate sanction.

### IV. *Meaningful Adjudication*

Stilley's next argument is that the special judge erred because he failed to "meaningfully adjudicate" his legal arguments. As a preliminary matter, in his brief to this court, Stilley purports to "incorporate all the legal arguments presented" to the special judge in eleven specific pleadings, and he cites *Jones v. Ragland*, 293 Ark. 320, 737 S.W.2d 641 (1987), for the proposition that, according to Stilley, "incorporation by reference seems to be acceptable so long as the arguments are included in the addendum." However, in *Ragland*, we held that it was improper for a party to incorporate by reference a brief presented to the lower court in support of his argument on appeal where it was not abstracted. *Id.* at 324, 737 S.W.2d at 644. We do not read *Ragland* to mean that a party can incorporate arguments made to the trial court into the appellate brief so long as the lower-court pleading is included in the abstract or addendum. Such a holding would eviscerate our rules regarding briefing length and would render meaningless our holdings that we do not address arguments that are not sufficiently argued or briefed to this court. Ark. Sup. Ct. R. 4–1 (2010); *see also Gatzke v. Weiss*, 375 Ark. 207, 215, 289 S.W.3d 455, 461 (2008) (This court will not address arguments unless they are sufficiently developed and include citation to authority.).

However, even if we considered the pleadings Stilley submitted to the special judge, his argument fails. Stilley does not specifically argue that the special judge erred in rejecting his legal and constitutional arguments. Instead, he contends that he "has tried at every turn, from the written response at the Committee on Professional Conduct, to the public hearing, to the disbarment proceedings, to obtain consideration of his constitutional and other legal arguments." According to Stilley, "[t]hese arguments have received either no consideration or such cursory consideration as to constitute a violation of due process." The record belies this claim.

The eleven pleadings cited by Stilley in his brief are as follows:

- March 3, 2008—Response to Petition for Disbarment
- July 30, 2008—Stilley's Motion to Dismiss, for More Definite Statement, and to Strike Immaterial Parts of the Supplemental Petition for Disbarment
- August 29, 2005—Reply to the Response to the Motion to Dismiss, for More Definite Statement, and to Strike Immaterial Parts of the Supplemental Petition for Disbarment
- September 30, 2008—Stilley's Response to the First Amendment/Supplement to the Petition for Disbarment
- September 30, 2008—Stilley's Motion to Reconsider the Motion to Dismiss, for More Definite Statement, and to Strike Immaterial Parts of the Supplemental Petition for Disbarment (with attached brief)
- October 20, 2008—(1) Response to Motion to Quash; (2) First Motion to Extend Time for Discovery; (3) First Motion to Strike Section 5(C)(1) of the Procedures as Unconstitutional; (4) First Motion for Determination of Calculation of Travel Miles; (5) First Motion to Permit the Deposition of Stark Ligon; and (6) First Motion to Disqualify Stark Ligon
- October 31, 2008, Motion for Reconsideration and Order Commanding Stephen Tabor to Sit for Depositions, with a Continuance and Extensions of Time

for All Operative Dates, Alternatively for an Order Concerning Deposition of Judges

- November 20, 2008—Stilley's Motion for Summary Judgment, for Dismissal for Lack of Jurisdiction, for Dismissal for Failure to State a Claim; for Rulings with Respect to Vague Allegations, and for Disqualification of Judge Lineberger and Stark Ligon
- March 18, 2009—Stilley's Motion for Directed Verdict or Judgment as a Matter of Law
- March 25, 2009—Rebuttal with Respect to Petitioner's Proposed Findings of Fact and Conclusions of Law
- April 20, 2009—Stilley's Motion for Directed Verdict or Judgment as a Matter of Law Regarding Counts 27–32

The record reflects that the special judge carefully considered each of these pleadings and entered written orders denying the relief Stilley sought on each motion. On September 12, 2008, he held a telephone conference on Stilley's motion to dismiss, for more definite statement, and to strike immaterial parts of the supplemental petition for disbarment. On September 16, 2008, he entered a ten-page written order, discussing each of Stilley's arguments and denying the motion. The special judge then entered an order denying Stilley's motion for reconsideration of that motion on October 20, 2008.

On October 9, 2008, Circuit Judge Stephen Tabor filed a motion to quash the subpoena issued to him by the Committee at Stilley's request. The special judge held a telephone conference on this motion on October 14, 2008, at which both parties were permitted to present their legal arguments. The special judge entered an order granting the motion to quash on October 16, 2008, specifically relying on this court's holding in *Stilley v. Supreme Court Committee on Professional Conduct*, 370

Ark. 294, 259 S.W.3d 395 (2007). Stilley filed a motion for reconsideration and order commanding Judge Tabor to sit for depositions on October 31, 2008, and the special judge entered an order denying that request on November 3, 2008.

On October 29, 2008, Stilley filed a motion seeking the following relief: (1) Response to Motion to Quash; (2) First Motion to Extend Time for Discovery; (3) First Motion to Strike Section 5(C)(1) of the Procedures as Unconstitutional; (4) First Motion for Determination of Calculation of Travel Miles; (5) First Motion to Permit the Deposition of Stark Ligon; and (6) First Motion to Disqualify Stark Ligon. In his motion for reconsideration filed on October 31, 2008, Stilley also sought a continuance and extensions of time for all operative dates, and, alternatively, for an order concerning the deposition of judges.

In response to these motions, the special judge entered orders to: (1) deny the motion for a continuance on November 3, 2008; (2) deny the motion to depose Ligon on November 6, 2008; (3) deny the motion to disqualify Ligon on November 6, 2008; (4) deny the motion to strike section 5(C)(1) of the Procedures on November 7, 2008; and (5) deny the motion to extend time for discovery on November 7, 2008.

On December 1, 2008, the special judge entered an order denying Stilley's motion to disqualify Ligon and Special Judge Lineberger. The same day, he entered an order denying Stilley's motion for summary judgment, specifically finding that the arguments contained in the motion were "more in the nature of a closing argument" and were not "supported by an Affidavit or by relevant facts generated and sworn to in discovery." He then concluded that there were genuine issues of material fact.

The special judge entered an order on April 22, 2009, denying Stilley's motions for directed verdict or judgment as a matter of law. And, finally, the arguments raised by Stilley in his response to the petition for disbarment, response to the amended petition for disbarment, and rebuttal with respect to Ligon's proposed findings of fact and conclusions of law were addressed in the special judge's findings of fact and conclusions of law entered on April 22, 2009.

 This exhaustive procedural history is included to illustrate that, while Stilley may disagree with the special judge's decisions in this case, he clearly received consideration of his constitutional and other legal arguments. We will not second guess the special judge with respect to his findings on the merits of these arguments because Stilley has made no argument as to why the judge was in error. It is well settled that we will not address arguments that are |₂₄insufficiently developed and lack citation to authority. *See, e.g., Gatzke* at 215, 289 S.W.3d at 461.

## V. *Deposition of Judge Tabor*

Stilley also argues that the special judge erred in granting the motion to quash brought by Circuit Judge Stephen Tabor. He contends that because Judge Tabor referred him to the Committee for possible violations of the Rules, he became an "accuser," and, as such, was required to sit for depositions. The special judge granted the motion to quash in reliance on precedent from this court. *Stilley v. Supreme Court Comm. on Prof'l Conduct*, 370 Ark. 294, 259 S.W.3d 395 (2007). He was correct in doing do.

 In *Stilley v. Supreme Court Committee on Professional Conduct*, we

squarely addressed this argument and affirmed our earlier decision to quash subpoenas issued to the then sitting justices of this court. 370 Ark. at 299–300, 259 S.W.3d at 398. In responding to Stilley's argument that the justices should recuse from the case, the court noted that he was attempting to "reviv[e] his attempt to have the justices of this court recuse, seemingly, from all cases involving him" based on an argument that, having previously referred him to the Committee, they were his " 'accusers' and have an interest in the outcome of the case." *Id.* at 303, 259 S.W.3d at 401. We held that Stilley was merely "renewing his long-standing argument that he disagrees with this court's decisions in cases he believes he should have won" and that "recusal is simply not appropriate nor warranted" in the case. *Id.* Just as the justices of this court were not required to sit for depositions after having referred Stilley to the Committee, |₂₅neither was Judge Tabor. The special judge, therefore, did not err in granting the motion to quash.

## VI. *Section 5(C)(1)*

Finally, Stilley contends that section 5(C)(1) is unconstitutional because it treats complaints from judges differently from those of other citizens. Ark. Sup.Ct. P. Regulating Prof'l Conduct § 5(C)(1) (2008) ("It shall be the duty of the Office of Professional Conduct to receive and investigate all complaints against any member of the Bar. Such complaints shall be docketed and assigned a permanent file number. The Office of Professional Conduct and the Committee shall accept and treat as a formal complaint any writing signed by a judge of a court of record in this State regardless of whether such signature is verified.").[9] Stilley claims that this pro-

---

9. Section 5(C)(1) of the Procedures has recently been amended and now provides that

"[t]he Office of Processional Conduct and the Committee *may* accept and treat as a formal

vision violates the Arkansas Constitution because "no person has a right to have their complaints treated as more important than the complaints of others solely on the basis of their position." Stilley specifically contends that section 5(C)(1) is unconstitutional because "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Ark. Const. art. 2, § 18.

■ In rejecting this argument, the special judge held that the rules promulgated by this court pursuant to its authority to regulate the practice of law are presumed to be constitutional $|_{26}$and that Stilley failed to cite any authority holding otherwise. We decline to address Stilley's argument on this point because he has not presented any evidence that he was prejudiced by the Committee's treatment of the Marschewski and Tabor Complaints.[10] *See Judicial Discipline & Disability Comm'n v. Simes*, 2009 Ark. 543, 354 S.W.3d 72 (due-process argument not considered where respondent failed to show prejudice). Since Stilley has failed to show how the Committee would have acted differently if the complaints were filed by nonjudges, we reject his argument.

### VII. *Conclusion*

We adopt the special judge's findings of fact and conclusions of law and find that Stilley violated the Rules as charged by Ligon in the petition and amended petition for disbarment. Further, given the number of violations, the length of time over which Stilley has incurred such violations, and Stilley's repeated unwillingness to accept the finality of court decisions, we agree that his actions constitute serious misconduct and that disbarment is the appropriate sanction. .

Order of disbarment entered.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

$|_1$This is an original action under the Arkansas Supreme Court Procedures Regulating Professional Conduct (Procedures) in which Petitioner Stark Ligon (Ligon), as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct (Committee), seeks disbarment of Respondent, Oscar Amos Stilley (Stilley), an attorney who was licensed to practice law in Arkansas on April 15, 1991. (Arkansas Bar ID # 91096). Arkansas is the only state which has issued Stilley a law license.

An Order of Interim Suspension was entered by Panel B of the Committee on December 27, 2007. At the Committee's request, Ligon filed his Original Petition for Disbarment of Stilley on January 16, 2008. The Petition sets out 23 counts of alleged $|_2$misconduct with additional allegations addressing the overall fitness of Stilley to hold a license to practice law. Stilley filed his 53 page Response on March 3, 2008. In addition, he filed a 26 page Motion for Recusal with Conditional Demand for Hearing on March 5, 2008, in which he seeks recusal of each of the Justices of the Arkansas Supreme Court.

On June 27, 2008, pursuant to a Finding and Order entered by Panel B of the Com-

---

complaint any writing signed by a judge." Ark. Sup.Ct. P. Regulating Prof'l Conduct § 5(C)(1) (2010) (emphasis added).

10. In the Marschewski matter, there was an additional complaint filed by an attorney from Fort Smith, Walton Maurras.

mittee, Ligon filed a First Amendment / Supplement to Petition for Disbarment against Stilley in which he alleged 9 additional rules violations listed as counts 24 through 32. In addition, Ligon set forth 10 additional allegations directed at Stilley's overall fitness to hold a law license. Stilley filed a Motion to Dismiss, For More Definite Statement, and to Strike Immaterial Parts of the Supplemental Petition for Disbarment on July 31, 2008. By Order dated September 16, 2008, the undersigned directed Ligon not to offer his Exhibit "I" in his casein-chief (alleged misconduct phase) and denied the remainder of Stilley's Motion. Stilley filed his Response to the amended pleading on September 30, 2008.

Pursuant to Section 13(B) of the Procedures, the undersigned Special Judge heard evidence relevant to the alleged misconduct of Stilley on December 8th through 10th, 2008. At the close of proof, the parties were advised that they could submit Proposed Findings of Fact and Conclusions of Law to the undersigned no later than 5:00 P.M., Monday, March 16, 2009. Ligon timely submitted his proposed findings and conclusions by e-mail and hard copy. Stilley, after first asking for additional time, e-mailed a pleading styled Motion for Directed Verdict or Judgment as a Matter of Law at 4:59 P.M. on March 16, 2009, and later advised that he intended such pleading to serve as his proposed findings and conclusions. Both parties submitted timely rebuttal briefs. On April 6, 2009, Stilley contended that he did not respond to Counts 27 through 32 because he did not know they were still viable. Although his claim was frivolous, he was granted until noon April 13, 2009, to respond to the five counts.

The evidence submitted in this case consists almost entirely of documents received as exhibits, including pleadings, affidavits, letters, motions, transcripts, briefs, court opinions, etc., in cases and hearings in which Stilley has been involved as a litigant and/or attorney. While Stilley was on the witness stand for a good part of three days, his testimony consisted primarily of:

(1) His identification and recognition of the various exhibits,

(2) His objections to the admissibility of most of the exhibits, and

(3) His opinion and evaluation of the documentary evidence offered by Ligon, and his view of the overall merits of the allegations made against him.

He offered very few relevant facts on his own behalf.

### THE ORIGINAL PETITION FOR DISBARMENT (Counts 1–23) PERRY—STILLEY—MARSCHEWSKI STATE COURT CASES

The facts leading up to the filing of this action start with a case styled *Parker v. Perry*, Sebastian County Circuit Case No. CV 2002–276. There, Stilley filed an illegal exaction suit on behalf of John Parker against City, County, School District, Community College and University officials alleging that Act 758 of 1995 violated Amendment 59 to the Arkansas Constitution and that the defendants were imposing illegal taxes upon Parker and other taxpayers similarly situated. The trial Judge, Honorable James Marschewski, granted summary judgment in favor of the defendants applying the doctrine of *res judicata* after finding that Parker was attempting to relitigate claims that had previously been fully developed and decided in a case styled *Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213 (2000).

Judge Marschewski also granted the defendant's Motion for Rule 11 sanctions against Stilley because Stilley had filed the

identical complaint in a case styled *Oxford v. Perry*, 340 Ark. 577, 13 S.W.3d 567 (2000) [*Oxford II*]. Stilley appealed and the Arkansas Supreme Court affirmed both the grant of summary judgment and the award of Rule 11 monetary sanctions against Stilley personally. *Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003).

On July 29, 2004, the Fort Smith School District (FSSD) filed a notice of noncompliance. On August 4, 2004, the University of Arkansas at Fort Smith (OAFS), filed a motion to enforce the sanctions previously imposed, alleging that Stilley had failed to comply with the Circuit Court order. A hearing was held on September 22, 2004, resulting in the Court directing Stilley to provide certain information concerning his finances that he alleged prevented him from paying the sanctions.

On October 14, 2004, UAFS filed a Motion for citation for contempt contending that Stilley had failed to comply with any of the provisions of the Order of September 22, 2004. On October 26, 2004, Stilley wrote a letter to Judge Marschewski saying, among other things:

I have received motions from James Llewellyn and Walton for show cause seeking to hold me in contempt of an order of the court. The order in question is under appeal at the present time. You acknowledged that I was unable to pay, but nonetheless imposed a cash bond of nearly $16,000.00, the same amount you knew I was unable to pay, and refused to allow a corporate surety bond. I intend to respond by pleading to the motions for contempt. This letter, however deals with certain ethics matters.

You have received a complaint that I filed against you and others. Part of this complaint deals with the fact that your order seeks to seize more than 25% of my earnings. This would appear to violate 15 U.S.C. Sec. 1673....

. . .

Your order appears to violate the federal and state laws just cited, among others.

. . .

It thus appears to me that a crime has been committed in attempting to require me to pay more than 25% of earnings into the registry of the court.

. . .

The commission of a crime would seem to be professional misconduct.

I would prefer not to report your conduct to the Committee on Professional Conduct authorities. If I can find a fair and reasonable basis for concluding that reporting is not mandatory, I have no intention to make a report. Here are some reasons that I think would justify a conclusion that reporting is not mandatory:

1) A reasonable basis for believing that the criminal conduct was not Intentional;

2) A fair and logical basis whereby a reasonable person could conclude that your acts were not unlawful.

I am not suggesting that these two reasons are the only ones that would work. If you have another reason, by all means let me know about it so that I can give it reasonable consideration.

. . .

Please provide me with a basis for not filing a report with the appropriate professional authorities for judges and lawyers, no later than 1:30 P.M. on October 29, 2004, if you have such....

If you choose not to respond, I will also file a criminal complaint with the Sebastian County Prosecutor's office ... I do believe that the investigative and prosecutorial powers of the prosecutor's of-

fice are properly invoked when a judicial officer engages in an apparent criminal activity in an open and notorious manner, and refuses to provide any mitigating circumstances or innocent explanation.

Judge Marschewski failed to bend to Stilley's demand but self reported the allegations to the judicial ethics committee.

Stilley followed up by filing grievances against Judge Marschewski with the Supreme Court Committee on Professional Conduct and the Arkansas Judicial Discipline & Disability Commission. Both complaints were dismissed. In addition, Stilley filled out and filed a Warrant Information sheet with the Sebastian County Prosecuting Attorney contending that Judge Marschewski had committed a crime in his administration of the case against him. A warrant was not issued.

In Stilley's Motion for Recusal filed in *Parker v. Perry*, he alleges in paragraphs 3 and 4:

> Counsel for the Fort Smith Public School District and others, James M. "Mitch" Llewellyn, Jr. and Walton Maurras, counsel for the University of Arkansas at Fort Smith (UAFS) were both sent a letter informing them of the criminal nature of their attempt to compel the payment of more than 25% of the earnings of undersigned. . . .

> Mr. Llewellyn did not respond. The whole of the response of Walton Maurras was: "I'm disappointed in you. Threats of grievance complaints won't work. You do what you think is in your best interests and we'll see what happens.

Stilley had earlier advised Maurras and Llewellyn by letter that he would file ethics complaints against them unless they responded in a particular manner no later than the close of business on October 22, 2004. When Stilley did not receive the responses he demanded, he filed a grievance against both lawyers with the Committee on Professional Conduct. The complaints were dismissed.

Stilley responded to the Motion for Contempt, and on November 19, 2004, he filed a Motion for Judge Marschewski to recuse alleging, *inter alia* that the judge committed federal and state criminal offenses by entering the Order in question. His Motion for Recusal was denied by Order dated November 22, 2004. The Court conducted a hearing on the contempt motion on January 14, 2005, found Stilley in contempt; sentenced him to 30 days in jail and assessed a fine of $50 for each day Stilley continued to defy the Order. The Court agreed to suspend the finding of contempt if Stilley complied with the Order within five days of entry. The Order was entered January 18, 2005.

Three days later, Stilley filed a document entitled "Submission of Documents Demonstrating the Court's Advocacy of Westark/UAFS." In addition, on February 1, 2005, Stilley filed a "Motion to Amend Findings of Fact and Law and for Additional Specific Findings and Law Pursuant to Rule 52." The trial court did not take any action on the Motion. Stilley appealed and the Supreme Court affirmed the action taken by the Circuit Court. *Oscar Stilley v. Fort Smith School District, University of Arkansas at Fort Smith and Jim Perry, et al.*, 367 Ark. 193, 238 S.W.3d 902 (2006). In its opinion the Court said, at pages 200–202, 238 S.W.3d at 906–907:

> On November 19, 2004, Stilley filed a motion to recuse. The same day, Stilley filed a motion to continue a Contempt hearing set for November 23, 2004, and in that motion he asserted a right to a hearing on his motion to recuse. In the motion to recuse, Stilley alleged that

Judge Marschewski had a "substantial, direct, pecuniary interest" in the outcome of the litigation, that he had "demonstrated a deep seated personal and deep seated bias and prejudice," and that Judge Marschewski denied a request to grant full medical expenses in an unrelated case. He further asserted that there were other instances of prejudice that he could cite but did not do so. No significant facts in support of these allegations were provided by Stilley in his motion to recuse.

In a November 22, 2004, order, the circuit court granted a continuance as to the contempt hearing to January 14, 2005, but denied the motion to recuse without a hearing. Stilley did not file a motion for reconsideration on his motion to recuse.

At the contempt hearing on January 14, 2005, Stilley asserted, for the first time, that Judge Marschewski had been a member of a UAFS committee that sought to obtain passage of the taxes at issue in *Parker v. Perry.* Stilley did not move for Judge Marschewski to recuse, nor did Stilley move to renew his motion to recuse. However, at that time, Judge Marschewski stated that he had no recollection of being a member of any such committee and invited Stilley to present any evidence he had on the issue. Stilley made no attempt to introduce any evidence on this issue at the hearing, nor did he ask the circuit court to allow the record to remain open so that he could introduce evidence at a later date. Stilley had ample time to secure the evidence, as the circuit court continued the hearing, at Stilley's request, from November 22, 2004 to January 14, 2005. At the close of the hearing, Judge Marschewski stated that the matter was being taken under advisement, and that a decision would issue by Monday or Tuesday of the following week, or in other words, by Tuesday, January 18, 2005, at the latest. Clearly, Judge Marschewski expected Stilley to present any evidence he had prior to taking the matter under submission on January 14, 2005. Even if Stilley believed that Judge Marschewski offered to consider any evidence introduced after the hearing, he certainly knew he had to present it to the court before Tuesday at the latest. Nevertheless, Stilley made no attempt to offer evidence prior to the judgment issuing on Tuesday, January 18, 2005.

We note, however, that Stilley attempted yet again to raise the issue of Judge Marschewski's supposed committee membership on January 21, 2005, by way of a pleading entitled, "submission of Documents Demonstrating the Advocacy for Westark/UAFS." Attached to the pleading is a June 13, 2001, UAFS web posting listing Judge Marschewski as one of a number of "area leaders" who were to "lead the effort of citizens, students, college faculty and staff in providing information to the voters, who will determine whether Westark College becomes a four-year university." The article indicates that a ¼ cent sales tax would result if voters made Westark a four year college. The second item attached to the pleading is a Wednesday, June 20, 2001, newspaper article from *The Times of Fort Smith* regarding ethics and advocacy of Westark supporters. Judge Marschewski is not mentioned in the article. The January 21, 2005, pleading includes no mention, does not seek reconsideration of the order entered on January 21, 2005, and makes no attempt to introduce the attached items into evidence. It asks the circuit court

to do nothing with respect to recusal. In that regard, it is a nullity. . . .

### JONES—STILLEY STATE COURT CASES

On January 16, 2002, two weeks after the trial judge filed his opinion resolving a contested case; Stilley entered his appearance in the case on behalf of Buck Jones (a losing party) by filing a pleading styled "Cross Claim Complaint", which raised constitutional issues. The trial court dismissed the pleading finding that it was, in reality, a compulsory counterclaim and should have been brought before or during the trial of the matter. The Supreme Court affirmed on appeal. *Jones v. Double "D" Properties, Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003) [*Jones I* ].

Following issuance of the mandate in *Jones I*, the prevailing party, Double "D", filed a petition asking the trial court for an order releasing funds posted as *supersedeas* by Buck Jones and his wife, Robbie (who were both parties in the case), as compensation for losses and costs incurred during the appeal. On April 23, 2003, Stilley, acting on behalf of both Joneses, responded to the petition and also filed a motion seeking permission to file an illegal exaction complaint against other parties in the case. The trial court denied Joneses' motion based on the Supreme Court mandate in *Jones I*. On appeal, the Supreme Court affirmed holding that the issue had already been decided in the first appeal and was, therefore, the law of the case. *Jones v. Double "D" Props., Inc.*, 357 Ark. 148, 161 S.W.3d 839 (2004). [*Jones II* ]

### JONES—STILLEY FEDERAL LAWSUITS

On October 5, 2004, Robbie R. and Buck D. Jones filed what appeared to be a *pro se* complaint in the United States District Court for the Western District of Arkansas naming Double "D" Properties, the State Land Commissioner, State Treasurer, County Assessor, County Judge, County Collector, County Treasurer, Fort Smith School Board Members, UAFS and its attorney, City of Fort Smith and every Justice on the Arkansas Supreme Court as defendants. *Robbie R. Jones and Buck D. Jones v. Double "D" Properties, Inc., et al.*, Case No. Civ. 04–2220. They raised identical or substantially similar claims to those raised in *Jones I* and *Jones II*. In addition they allege:

> Fort Smith School Board Defendants then conspired with others including one James M. "Mitch" Llewellyn, an attorney, and Benny Gooden, the Superintendent of Schools, to use a judgment known to be issued and supported by an incompetent tribunal, to illegally harass and threaten the attorney who brought the original action for illegal exaction, in the class of which Plaintiffs are members, to make an example of him, and demonstrate that they have no allegiance to the rule of law, and no intention to comply with the rule of law, and every intention to deprive the Plaintiffs of competent counsel by conspiratorial conduct, by threats, and by flagrantly illegal harassment.

Plaintiffs' complaint further alleged that the Arkansas Supreme Court Justices "corruptly and fraudulently refused to consider and fairly adjudicate said claim for the payment of the full amounts of the sale price of the plaintiff's family home, motivated by passion and prejudice against . . . Oscar Stilley". Paragraph 86 of the complaint continues: "Despite full knowledge and conscious awareness of federal constitutional law requiring that said defendants recuse and allow the Governor of Arkansas to appoint jurists untainted by the animus ignited by present, pending, substantial ac-

tions between said defendants and Oscar Stilley . . . said defendants continued to sit on the case, and perverted judgment against the plaintiffs herein, depriving them of a competent tribunal and an honest and impartial arbiter of the dispute." It is further alleged that the Justices' refusal to recuse from *Jones I* and *Jones II,* because of a conflict of interest, they "willfully and knowingly" deprived plaintiffs of due process and of the right to a "competent tribunal". They ask the Court to order the Arkansas Supreme Court to rescind its decisions against them, to order each Justice to recuse himself or herself from the rehearing and to award compensatory and punitive damages against each Justice.

In a 37 page brief filed by the Joneses, the following is found at page 20 and 21:

Judge Marschewski has demonstrated a total disregard of judicial ethics. He has knowingly and willfully entered an illegal order against Oscar Stilley . . . presided in cases in which he has a clear conflict of interest, failed to disclose material facts showing a conflict of interest. Recently, he entered an order refusing Oscar Stilley a hearing and denying a motion to recuse despite the many facts demonstrating that he is an incompetent jurist in litigation involving *Parker v. Perry.*

On page 25 of the brief the following is said:

We don't want to dish the same thing back to them, even though they have had UAFS semi-secret agent Marschewski engaged to fight their battles for them.

Page 28 of the brief reflects:

We would not have sued these justices save for the fact that the justices practically revel in their lawbreaking. They act in a way that no rational judge could act and still have a fig leaf or an idle thought that they are obeying the law.

As to who actually drafted the Joneses' pleadings, the Joneses said in the aforesaid Brief:

We would not deny having received a great deal of professional guidance and drafting assistance from a treasured friend.

The deposition of Buck Jones was taken on March 1, 2005. Mr. Jones stated that he and Stilley and a girl in Stilley's office typed the complaint. At page 9 of the deposition, beginning at line 17 and continuing to the next page, the following is reflected:

Q. Okay. Mr. Jones, are you saying at that time Oscar Stilley was your lawyer? Because if at that time he wasn't your lawyer, there's no privilege.

A. If he's typing it, he's working for me.

Q. Okay. So at the time—

A. So he would be working.

Q. So at the time this was typed, he was working for you?

A. That's right.

Q. He was your lawyer?

A. Right.

At page 21 beginning with line 16 and continuing to the next page, the deposition reflect:

Q. Did you go to Mr. Stilley's office and prepare it?

A. That's right.

Q. And then you signed it and filed it?

A. Right

Q. Why did Mr. Stilley not sign it if he was representing you?

A. I don't know. I never even thought about it.

Q. Did he ever discuss it with you?

A. No.

Q. He just asked you to sign it?

A. Asked me to sign that?

Q. Yes, sir.

A. I was right there, yes.

Q. Okay. And that's the same that's true with all these documents, you were there and he asked you to sign them?

A. He didn't ask me. He just gave them—handed them to me and I signed them and took them to the courthouse.

And, at page 24, beginning at line 19:

Q. Does Mr. Stilley still represent you today?

A. Yes, sir.

At page 72, beginning at line 3, the deposition continues:

Q. Okay. Did—at the time that you talked to Oscar, did he tell you that he had filed Complaints similar to the one that he filed for you? Did you know that he had filed Complaints for illegal exaction for violations of Amendment 59?

A. Well, I knew he did, yea.

Q. You were aware of that?

A. Yeah.

Q. Did you know what the outcome of those cases was?

A. I saw the judge's ruling up here. And the judge made up the law as he went it looks like.

Q. So before this complaint was filed in this case, did you know that Oscar Stilley had filed a similar Complaint for other people and had lost each of those cases here in Sebastian County?

A. Yes. But have you read the ruling by the judge?

At a hearing for contempt citation conducted on January 14, 2005, Stilley was asked if he prepared the complaint filed by Buck Jones as USDC case No. CV-04-2220. His answers, beginning on page 43 of the Transcript were:

A. I assisted.

Q. To what extent did you assist?

A. That's hard to say.

Q. Did you type it?

A. I worked on it.

Q. Did anybody else type on it?

A. You'd have to ask somebody else.

Q. To your knowledge, did anyone else type it?

A. Buck and Robbie Jones, they're the signatories on that. You'd have to ask them about what they did.

Q. That's not my question, Mr. Stilley: Did anybody else type it?

A. I don't have personal knowledge of that.

At page 45, beginning at line 10, the Transcript reflects:

Q. Did you type it on your computer?

A. That was typed on—that was typed on a computer that I use.

Q. Did you type it?

A. I did a lot of it. Yes, I did.

Q. Do you know anybody else that did any part of it?

A. I don't have personal knowledge of that.

Beginning on page 46, line 19:

Q. Did Buck Jones type any part of this complaint?

A. Not to my knowledge.

Q. Did Robbie Jones type any part of this complaint?

A. Not to my knowledge.

Q. Did anyone else type any part of this complaint?

A. I've already answered that question.

Beginning at page 48, line 17:

Q. Did Mr. Jones come to you and ask you to file this complaint?

A. He asked for assistance.

Beginning at page 54, line 17:

Q. Do you have an attorney/client relationship with Mr. Jones involving that case?

A. I've provided attorney/client services—I've provided attorney services to Buck Jones on an as-needed basis.

Finally, at page 55, beginning at line 16:

Q. ... It's a simple question. You either prepared this Document or you did not.

A. I assisted Mr. Jones materially in the preparation of that complaint.

Stilley entered an appearance on behalf of the plaintiffs before the case was decided.

On April 5, 2005, pursuant to defendants' Motion to Dismiss or for Summary Judgment, District Judge Garnett Thomas Eisele dismissed the complaint in its entirety. The decision was affirmed by the 8th Circuit Court of Appeals in an unpublished Per Curiam filed May 5, 2006, Case No. 05–2242. A Petition for rehearing was denied.

While the above named case was pending, Stilley personally filed a lawsuit raising similar claims against some of the same parties, plus Judge Marschewski, in the same United States District Court for the Western District of Arkansas. *Oscar Stilley v. James Marschewski, et al.*, Case No. CIV–04–2225. In its Memorandum Opinion and Order of Dismissal, of this case, the Court observed that Stilley had raised the same claims against the Judges in the previous case and that the same analyses applied here. Judge Eisele also observed that Stilley had raised and lost identical illegal exaction claims involving school taxes not once, but several times. He held that Stilley's attempt to manufacture a RICO action against the school defendants was disturbing and frivolous. The Judge continued:

The Court further finds that Mr. Stilley violated Fed.R.Civ.P. Rule 11 when he filed an Amended Complaint contending that UAFS violated his civil rights by attempting to collect sanctions that 'were without due process.' UAFS was a party to the state court action in which Judge Marschewski entered sanctions against Mr. Stilley. Mr. Stilley had the opportunity to challenge and did challenge the award of sanctions entered against him. Having lost that battle, he filed suit against UAFS in federal court, contending that UAFS breached federal law, statutory and constitutional, when it attempted to collect the state court judgment. The Court finds it more likely than not that Mr. Stilley sued UAFS 'for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation'. Fed.R.Civ.P. Rule 11(b)(1).

The Judge further said: "In light of the entire record in this case and the other ongoing litigation by Mr. Stilley noted above, the Court can only conclude that Mr. Stilley has pursued, and continues to pursue, this lawsuit for improper purposes". The Court sanctioned Stilley by directing that he pay the costs and attorney fees incurred by UAFS, and that he be prohibited from filing any complaints, as an individual or attorney, against specifically named parties in both the Eastern and Western District Courts of Arkansas

without first receiving the approval of the Court.

Stilley appealed and the Eight Circuit Court of appeals affirmed in an unpublished Per Curiam filed May 26, 2006. *Oscar Stilley v. James Marschewski, et al.,* Case No. 05–2816. The appellate Court said, in part:

> We are troubled by Stilley's mischaracterization of the record as to the applicability of Rule 11's safe-harbor provision and Rule 11(c)(1)(B). We reject Stilley's argument that the limitations the district court imposed on his practice constitute attorney discipline, as opposed to Rule 11 sanctions. *See Stilley v. James,* 48 Fed.Appx. 595, 597 (8th Cir.2002) (unpublished per curiam) finding no abuse of discretion in applying appropriately fashioned Rule 11 sanctions enjoining Stilley from filing future cases involving issues that had been litigated or raised in three lawsuits and two appeals; court acted appropriately by helping stop Stilley's pursuit of fruitless litigation.

### FIRST AMENDMENT / SUPPLEMENT TO PETITION FOR DISBARMENT (COUNTS 24–32)

### STILLEY—TABOR STATE COURT CASE

A petition for rehearing was denied by the Arkansas Supreme Court on October 26, 2006, in *Stilley v. Fort Smith School District, et al.,* 367 Ark. 193, 238 S.W.3d 902 (2006). The Mandate issued and *Parker v. Perry,* (CV–2002–276) was back before the Sebastian County Circuit Court. In the interval, Judge Marschewski was appointed a United States Magistrate Judge for the Western District of Arkansas. Stephen Tabor was appointed in place of Judge Marschewski to serve as a Circuit Judge in Sebastian County.

On February 13, 2007, Judge Tabor entered an Order directing Stilley to surrender to the Sebastian County Detention Center no later than February 15, 2007, to begin serving the 30 day sentence imposed by Judge Marschewski in *Parker v. Perry.* Stilley surrendered, but was permitted to serve his sentence on a day-time "work release". That allowed him to spend nights in jail and work in his law office during the daytime. A hearing was set for March 14, 2007, on an Amended Motion to Enforce Sanctions, to Compel Compliance with Previous Orders of the Court, and to Modify the Order of September 22, 2004.

On March 2, 2007, Stilley filed a 51 page Petition for Habeas Corpus, along with 6 volumes and attachments with the federal District Court for the Western District of Arkansas. He also filed a 9 page Motion to Stay his state jail sentence while his federal action was pending. The Motion was denied by the United States Magistrate Judge and then by the District Court Judge on March 13, 2007.

At the commencement of the *Perry* hearing on March 14, 2007 Judge Tabor overruled a Motion for Continuance filed by Stilley, finding that Stilley had not given a valid reason for a continuance, and in addition, that he (Judge Tabor) had read an article in the local newspaper quoting Stilly as saying, "I don't intend for that hearing to take place." Stilley then orally moved for Judge Tabor to recuse, which motion was denied. During the hearing Stilley admitted that he had not complied with the Order. After Stilley raised numerous issues that had already been settled, Judge Tabor announced:

> Let me just say, Mr. Stilley, and I will tell everybody, I am not here to reinvent the wheel. I am not going to rehear, matters that have been heard, either in

this court or on appeal. This is simply an action to enforce a previously entered order. I am not going to rule on whether that order was appropriate or not. That Order was made, it has been affirmed by the State Supreme Court and I am not going to rehear that.

After each side rested, and after arguments were heard, Judge Tabor stated:

Mr. Stilley, you have had two and a half years through every Court in the State of Arkansas to address this. It is my intention, once again, not to relitigate this matter. My intention is to enforce the orders of this court and that is what I intend to do.

Let me tell you what I am going to do. I am going to set this matter for March 26th at noon, and let me tell you why I am doing that. I have to leave for Houston tomorrow because my father is having surgery there. I will not be back in the office until March 26th. I expect that if things continue as they are there are going to be orders that are going to generate more activity which I think will require my attention, and I do not want to be in Houston when that happens. We are going to appear back here at noon on March 26th at which time, Mr. Stilley, is to fully comply with the order of the Court previously entered in September of 2004. In addition, by close of business on this Friday, two days from now, Mr. Stilley, I want you to provide to my docket administrator a list of every current court setting you have docketed as of today. You are not to ask for any more settings in the next two days, but by close of business Friday I want a list of every court date that you currently have set. The purpose of that is to determine what extent, if, any, if this continues to be your position that you are going to refuse to abide by the order

of this Court, then, I need to determine if work release is appropriate or necessary in your case, and I need that information to make that decision.

The very next day Stilley caused subpoenas to be issued for service upon seven named individuals, including Judge Marschewski, to appear at his office at 10:00 a.m. Friday, March 23, 2007, so that he could take their deposition for use in this case. Motions to quash were filed by each of the named individuals. Circuit Judge Michael Fitzhugh, in Judge Tabor's absence, granted some of the motions to quash.

On March 22, 2007, Circuit Judge James O. Cox, in Judge Tabor's absence, conducted a hearing on the remainder of the Motions. After some discussion between Judge Cox and the attorneys, Stilley told the Court that "my position on it (subpoenas) is that the legality of the order would be a proper matter to show that a person shouldn't be incarcerated under that order." He also told Judge Cox that he understood Judge Tabor "wouldn't consider anything about the illegality of the Order". Judge Cox, after advising Stilley that he could not relitigate settled matters, granted the Motion and quashed the remaining subpoenas. He also directed Stilley not to issue subpoenas for the March 26th hearing to individuals he intended to call for the same purpose. Stilley thereupon announced that he was withdrawing the subpoenas.

At the March 26, 2007, hearing, Stilley acknowledged that he still had not complied with the Order in question. Judge Tabor entered a formal Order that same day finding Stilley in contempt and remanding him to the Sebastian County Adult Detention Center until he purged himself by complying with the Order.

On April 23, 2007, Stilley filed a Motion to withdraw his federal "habeas" case.

The federal court dismissed that case on May 16, 2007.

On May 2, 2007, Judge Tabor conducted another hearing in the *Parker v. Perry* case. Stilley was again found in contempt for disobeying the March 14, 2007, Order directing him not to relitigate matters long since decided at trial and on appeal. He was sentenced to pay the opposing parties' attorney fees. Stilley was directed by Order dated May 11, 2007, to pay fines previously imposed, into the registry of the court.

Stilley filed a pleading entitled "Brief Regarding Assessment of Penalty, and Interest, for a Final Order" on May 11, 2007. On May 15, 2007, Stilley filed a motion for new trial with supporting brief. After UAFS and FWD responded, the Court entered an order on May 21, 2007, denying Stilley's motion for new trial.

Stilley filed another brief on May 23, 2007, and an amended motion for new trial on May 23, 2007. The Court denied the amended motion for new trial on June 5, 2007.

On June 19, 2007, Stilley filed a Notice of Appeal from the Orders of the Circuit Court entered May 2, 2007; May 11, 2007; May 21, 2007; and June 5, 2007. On October 19, 2007, Stilley filed a Petition for Prohibition commanding the sifting trial judge to recuse from further participation in the case. The Supreme Court dismissed the Petition without opinion on November 8, 2007.

On December 2, 2007, Stilley filed a 25 page motion asking each justice of the Arkansas Supreme Court to recuse from hearing a motion for reconsideration he filed that same day. He contended that because the Supreme Court had earlier, referred a matter involving him to the professional conduct committee for its assessment and review, the justices became his "accusers", and were biased and prejudiced against him. The Court denied that Motion in a Per Curium entered January 31, 2008. (Case No. 07–981) On that same day, the Court granted Stilley's Motion to reconsider other matters.

On September 18, 2008, The Supreme Court affirmed the various decisions of the trial court. *Stilley v. UAFS, et al.*, 374 Ark. 248, 287 S.W.3d 544 (2008).

### "OVERALL FITNESS" TO HOLD A LAW LICENSE JUDGE BELL/OUWENGA CASE (Michigan)

On October 27, 2003, Stilley filed a Motion for *pro hac vice* (PHV) admission to be counsel for Karen Ouwenga, who was charged with federal income tax fraud in the United States District Court for the Western District of Michigan. *United States of America v. Karen Ouwenga,* Case No. CR–03–212. An Order was entered On November 5, 2003, denying the Motion, the Court finding that Stilley's past actions were "inconsistent with the standards of professional conduct this Court requires of attorneys practicing in this district, toward clients, counsel and the Court."

Stilley sought review and a three judge panel was appointed to consider the matter (Case No. 04–0009). The panel conducted a hearing on January 12, 2004, and filed its opinion on January 28, 2005. It observed that Stilley supported his petition for admission with a Certificate of Good Standing from the Arkansas Supreme Court, dated October 2, 2003. In the Certificate, a deputy court clerk certified that:

Oscar Stilley was enrolled as an Attorney at Law and Solicitor in Chancery by the Supreme Court of this State on April 15, 1991; that no disbarment proceedings have been filed against him in this court, *that he has not had any*

*adverse disciplinary action whatsoever during the past three year period. and that his private and professional character appears to be good.* (emphasis added)

The certificate stated that the seal of the Arkansas Supreme Court was affixed, which was not true. The Court later received a new Certificate from the Arkansas Supreme Court dated January 1212004, which had been obtained by the U.S. Attorney's office, which did bear the seal of the Court. That Certificate did not contain the words underlined above in the Certificate Stilley furnished.

Judge Robert Holmes Bell, writing for the panel, said at page 9 of the Opinion:

Upon questioning by this panel, Mr. Stilley conceded that the Certificate he had presented appeared flawed on its face, since he had certainly experienced disciplinary action during the three years immediately preceding October, 2003.

At pages 12 and 13 the Court said:

Thus, it became the obligation of Mr. Stilley to show by clear and convincing evidence that, in light of a rather lengthy list of professional rules violations, his practice of law in this district will not be detrimental to the integrity and standing of the bar of this court, or to the administration of justice or subversive to the public interest in this district.

Petitioner has failed to meet this obligation in several respects. First, the disciplinary record of the petitioner in his home state has been extensive in length, and disciplinary proceedings are ongoing. He has been found to have been in violation of the Model Rules of Professional Conduct of that jurisdiction approximately twenty times. Frankly, the members of the panel cannot recall any other applicant to the bar of this court having had anything approaching twenty rule violations. Moreover, these violations are relatively recent and arise from several different cases. Petitioner has failed to show why accepting one with this disciplinary record would not be damaging to the integrity and standing of the bar, since to do so would send a message to the bar and to the public that this court tacitly countenance petitioners apparent inability to conform his practice to well recognized rules.

. . .

Petitioner has an extensive track record. And unfortunately his explanation of it seems in large part an attempt to minimize his deprecations or to explain them away, and does little to convince the panel that petitioner fully appreciates where this type behavior is leading an otherwise bright and articulate lawyer.

Finally, the Court concluded at page 15:

Petitioner's refusal or inability to conform his practice to generally accepted principles of law directly impacts the administration of justice.

Stilley's appeal to the Sixth Circuit Court was affirmed on November 23, 2005. *Stilley v. Honorable Robert Holmes Bell, et al.,* 155 Fed.Appx. 217 (6th Cir.2005). On pages 221–222 of its Opinion, the court said:

Stilley makes a brash and unsupported claim that there are ulterior motives in this case to deny his petition, alleging that Judge Bell and Assistant United States Attorney Donald Davis "traveled to various places to speak concerning methods of 'dealing with' persons whose opinions of the proper interpretation of various tax laws fail to conform to the opinions of Davis and Bell." . . . He further suggests that their conduct "gives rise to serious ethical considerations,"

and that "{w}here the judge publicly announces his views on tax issues, and then presides over criminal prosecutions of persons with unconventional views of one or more of the tax laws, the public perception is likely to be less than scrupulous impartiality in the judicial proceedings.... Stilley provides no factual support for these spurious assertions however. There is simply no indication in the record that Stilley's petition was denied for any reason other than his extensive disciplinary record.

Stilley's Petition for Rehearing was denied on March 4, 2006. His petition for Writ of Certiorari to the United States Supreme Court was denied October 17, 2006. (Case No. 06–1576)

### ENSIGN CASE (Arizona)

Patricia Ann Ensign was charged along with eight other individuals with a number of counts of willful failure to file tax returns, in the United States District Court for the District of Arizona. *United States of America v. Dennis O. Poseley, et al.* (Case No. CR–03–344). Eight months after the District Court appointed an attorney to represent Ensign, the Court granted her motion to appoint Stilley as "legal advisor/consultant" to her defense. On January 25, 2005, upon Ensign's motion, the Court appointed Stilley "CJA co-counsel PHV" and as lead counsel. Fifteen days later Stilley submitted a motion for admission PHV with a certificate of good standing. The Court granted the motion on February 11, 2005.

On February 16, 2005, the Government submitted an ex parte notice of Stilley's Rule 11 sanctions in Arkansas. The Court asked Stilley to Respond. Instead of responding to the insufficiencies in his PHV application, he alleged that the Government's motion was not properly styled.

On March 18, 2005, the District Judge asked Stilley whether he had been subjected to disciplinary proceedings in Arkansas, and if so, why the Court was not advised of the proceedings. The Judge then directed Stilley to respond in writing.

On April 19, 2005, after considering Stilley's written response which included a 28 page brief collaterally attacking the various proceedings in Arkansas, the Court entered an Order terminating Stilley's representation of Ensign as lead counsel, legal advisor, and/or consultant under the CJA. In its opinion, the Court noted that "Mr. Stilley was not forthcoming regarding the various matters pending in Arkansas". It also said that "Mr. Stilley was either unable or unwilling to focus on the key issue, further lends credence to this Court's concerns regarding his representation." The court further found that some of the pleadings Stilley filed on behalf of Ensign were of dubious merit and possibly submitted for improper purposes such as delay.

Ensign was tried and convicted on 4 counts of willful failure to file tax returns. She appealed. Stilley also sought review of the district court's refusal to allow him to proceed PHV as Ensign's attorney. *United States of America v. Ensign and Oscar Stilley v. Poseley, et al.*, 491 F.3d 1109 (9th Cir.2007). Ensign's conviction was affirmed and Stilley's appeal was dismissed. The Court stated at page 1115:

All of the trial court's concerns were justified. Its concerns with Stilley's ethics were reasonably based not only on pending disciplinary proceedings in Arkansas, but also on Stilley's failure to state in his *pro hac vice* application that he was subject to pending disciplinary proceedings and on his failure to directly address those proceedings when so requested. This, combined with Stilley's failure to cure his contempt of the Arkansas court order, raised concerns that

he would "neither abide by the court's rules and practices" nor "be readily answerable to the court." (citation omitted). Furthermore, the record reveals that following his appointment as Ensign's counsel, Stilley had filed numerous motions of dubious merit. Although a defendant is entitled to a zealous defense, the number and nature of the motions allowed for a reasonable concern that Stilley might consider obstruction to be part of the defense he would proffer for Ensign.

### CAVITT CASE (Tennessee)

On April 21, 2005, Stilley filed a 16 page civil complaint on behalf of William Cavitt, a California resident, in the United States District Court for the Eastern District of Tennessee. *William Cavitt v. Bob Wills, et al.* (Case No. 06cv80). He alleged that the named defendants had committed fraud, assault, battery, false imprisonment, negligence, failure to provide necessary medical treatment, intentional and/or negligent infliction of emotional distress, and had violated the fair labor standards act. On that same day he filed a Motion for Admission PHV, attaching a Certificate of Good Standing dated February 2, 2005, issued by the United States District Court for the Western District of Arkansas. He did not provide the Tennessee Court with a Certificate from the Supreme Court of Arkansas, the only state from which he held a law license. He also did not inform the Tennessee Court of his numerous ethical problems in Arkansas.

The same day he filed the aforesaid Complaint and Motion, Panel B of the Committee conducted a hearing in Arkansas involving Stilley (CPC No.2002–077). At the conclusion of the hearing, the Panel announced that Stilley would suffer a six months suspension of his law license. He did not report the suspension to the Tennessee Court.

On November 13, 2006, the defendants in the Tennessee case filed a Motion to Disqualify Stilley from PHV representation, setting out six reasons, each involving ethical violations by Stilley. On December 29, 2006, Stilley filed his response, alleging, at page 1 and 2:

Oscar Stilley is licensed and in good standing in the following jurisdictions:

| Jurisdiction | Date admitted |
| --- | --- |
| Arkansas Supreme Court | April 15, 1991 |
| Western & Eastern Districts Of Arkansas | June 25, 1991 |
| Central District of Illinois | June 6, 2002 |
| Northern District of Oklahoma | April 13, 2001 |
| Northern District of Florida | February 23, 2005 |
| 4th Circuit Court of Appeals | February 7, 2006 |
| 6th Circuit Court of Appeals | February 4, 2004 |
| 7th Circuit Court of Appeals | April 30, 2003 |
| 8th Circuit Court of Appeals | October 13, 1993 |
| 9th Circuit Court of Appeals | May 2, 2005 |
| 10th Circuit Court of Appeals | August 8, 2003 |
| 11th Circuit Court of Appeals | January 23, 2001 |

Surely these twelve jurisdictions can't all be wrong. Even the Arkansas Supreme Court routinely issues certificates of good standing to Oscar Stilley, to the present time, upon request, and will con-

tinue to do so unless a suspension of Oscar Stilley's license is actually implemented.

From page 3 of the brief:

The opinions of other courts concerning events in the home jurisdictions of undersigned counsel should be discounted in favor of an analysis of the actual charges of misconduct.

Page 6 of the brief reflects:

The sanctions in *Stilley v. Fort Smith School Dist., et al.* [367 Ark. 193] [238] S.W.3d [902], 2006 WL 2627537, Ark., September, 14, 2006 (No. 05–666) were made by a court deemed "incompetent" by the established case law of the 8th Circuit, of which Arkansas is part.

Stilley says at page 11 of his brief:

The Arkansas Supreme Court Committee on Professional Conduct refuses to make rulings on questions of law, when called upon to do so by persons there accused of unethical conduct.

On January 4, 2007, the United States Magistrate Judge entered an Order reluctantly allowing Stilley to appear PHV, pursuant to a local rule which only requires a certificate of good standing from the district court of the applicant's residence. But for the local rule, the Judge stated that "… Mr. Stilley would not be admitted" … He further said:

From the exhibits filed in support of defendant's motion, it is clear that attorney Stilley made intemperate, disrespectful, and unprofessional remarks about an Arkansas tribunal before which he practiced, for which he was suspended from practice for six months.

The Judge also noted that Stilley had been denied admission PHV in federal district courts in two other states for failing to reveal a suspension and a disciplinary proceeding.

The case-in-chief was dismissed, with prejudice, by Order entered September 19, 2007, after the Court granted defendants' motion for summary judgment.

### CAVITT CASE (Arkansas)

On December 5, 2006, while *Cavitt* was pending in Tennessee, Stilley filed the same styled case in the United States District Court for the Western District of Arkansas, *William Cavitt vs. Bob Wills, et al.* (Case No. FS–06–42). His pleading was entitled "Miscellaneous Action". He alleged that plaintiff needed to obtain deposition testimony and documents from persons within the Western District of Arkansas for use in the Tennessee case. Immediately after filing his pleading, Stilley caused a subpoena to be issued to Judge Marschewski directing the Judge to appear at Stilley's office at 1:30 p.m. on December 11, 2006, so that Stilley could take his deposition.

Judge Marschewski moved to quash the subpoena on December 8, 2006. Stilley filed a 28 page response on December 19, 2006, giving his reason for taking the deposition as:

… the subpoena in this case was entered for the purpose of preventing another judgment, based upon falsehoods by Honorable James Marschewski.

In the remainder of his brief, Stilley attempted to discredit Judge Marschewski and the Justices of the Arkansas Supreme Court and sought to justify relitigating matters long resolved, saying, "this case is not going away".

On December 21, 2006, Judge Robert T. Dawson entered an Order quashing the subpoena finding that:

Plaintiff seeks to depose Judge Marschewski regarding a contempt hearing

over which Judge Marschewski presided in *Stilley v. Fort Smith School Dist.*, ( [367 Ark. 193, 238 S.W.3d 902] 2006 WL 2627537). To allow Plaintiff to question Judge Marschewski about the reasons behind any decision he made as a judicial officer is inappropriate. The overwhelming authority concludes that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivate him in the performance of his official duties. (citations omitted).

### BENNETT CASE (Hawaii)

On July 19, 2006, Stilley filed an application for Admission PHV in the United States District Court for the District of Hawaii, seeking admission to serve as co-counsel for Hamlett C. Bennett, who was charged with several tax offenses, *United States of America v. Hamlet C. Bennett,* (Case No. 06–68). In his application, Stilley stated: "I am not currently suspended or disbarred in any Court". His application concluded with: "Pursuant to 28 U.S.C. Sec. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief". An Order granting Stilley PHV status was entered July 18, 2006.

The United States Attorney for the district filed a Motion to Disqualify Stilley from PHV representation on August 11, 2006, alleging, among other things, that Stilley failed to disclose a six month suspension he had been given in Arkansas on May 4, 2006, for violating four ethical rules. Although his Motion to Stay Pending Appeal was granted, the Government contended that he should have disclosed the entire matter.

After reviewing responses, the United States District Magistrate Judge entered an Order on September 12, 2006, granting the Government's Motion to Disqualify Stilley, saying at page 4–6:

Mr. Stilley has admitted that, prior to his application for admission *pro hac vice* in the instant matter, an order suspending his license to practice law was entered against him in the State of Arkansas and that he was denied admission *pro hac vice* in the United States District Court for the Western District of Michigan as a result of this suspension order. Although Mr. Stilley's suspension has been stayed pending his appeal, and he is challenging the denial of his application for admission *pro hac vice* in the Western District of Michigan, the fact remains that Mr. Stilley failed to disclose such information at the time he submitted his application for admission *pro hac vice* in this district, and only acknowledged the orders suspending his license and denying his admission *pro hac vice after* the Government brought these matters to light by filing the instant Motion.

. . .

Having one's license being recommended for suspension, even if the matter is being appealed, does not equate with being in "good standing".

. . .

Mr. Stilley's insistence that he is in good standing in Arkansas despite the order to suspend his license to practice law is more than merely troubling. His failure to disclose this information in his application for admission *pro hac vice* and his insistence that he is an attorney in good standing in Arkansas "strongly suggest through his behavior that he will neither abide by the court's rules and practices—thus impeding the 'orderly administration of justice'—nor be readily an-

swerable to the court". (citation omitted) Under the circumstances of this case, the public's interest in the prompt, fair, and ethical administration of justice outweighs defendant's interest in having Mr. Stilley represent him.

The Magistrate Judge's Order was affirmed by the District Judge on September 27, 2006. In its Opinion, the Court said at [45]page 11:

His (Stilley's) prior conduct demonstrates that he is likely to file frivolous papers that would unreasonably delay these proceedings and that he is unwilling to abide by court rules and ethical guidelines. (citation omitted)

The court is further concerned by what appears to be a pattern of accusing judges, justices, and officers of the court of wrongful conduct without any basis. Not only was Stilley suspended by the Arkansas Supreme Court because of his attempts to interrogate its justices and because of his intemperate and disrespectful conduct, but Stilley has also attempted to impugn the integrity of the Government counsel by raising an unsupported charge of "judge shopping." Stilley also indicated that Magistrate Judge Koayashi was not "even handed" or "fair and impartial" in deciding this matter. Stilley's unsupported accusation of improper conduct by all who disagree with him gives this court concern about how he will behave in future court proceedings.

### LAWRENCE CASE (Illinois)

On March 16, 2006, Robert Lawrence was indicted by a federal grand jury in the United States District Court for the Central District of Illinois, Peoria Division, and charged with three counts of tax evasion. *United States of America v. Robert Lawrence*, (Case No. 06–0019). Trial was set for May 15, 2006. Two days before trial, Lawrence's attorney, Oscar Stilley, informed the government that the Paperwork Reduction Act [46](PRA) would be part of Lawrence's defense. The Government moved for a short continuance, not because of Stilley's new alleged defense, but because Stilley had not provided certain discovery information. The judge, during a telephone hearing, directed Stilley to provide the information that day.

After the hearing, the Internal Revenue Service's reserve agents, while preparing for trial, discovered that Lawrence's tax liability for two of the three years in question had been calculated incorrectly. On May 12, 2006, the Court held another WI phone hearing in which the government announced that the issues it raised were cured. The government also moved to withdraw its motion for continuance. In addition, the government announced that it planned to file a motion in limine regarding the PRA defense. The government also moved to amend the indictment by interlineation. Stilley objected and the court denied the motion to amend.

Fearing that the errors were serious enough to undermine the jury's confidence in the government's case, the government [47]moved to dismiss all counts against Lawrence. The Court dismissed the case with prejudice.

Lawrence then asked the Court to award him attorney fees pursuant to the Hyde Amendment which provides for such when the government's position was vexatious, frivolous or in bad faith. His primary argument was that the PRA fully and absolutely protected him from the charges, therefore the government's prosecution of him was vexatious, frivolous and in bad faith.

The trial court dismissed the motion, finding, among other things, that Lawrence failed to cite a single case standing

for such a proposition. On appeal, the Appellate Court affirmed, *United States v. Robert Lawrence*, 217 Fed.Appx. 553 (7th Cir.2007), citing numerous cases supporting the government's position that the PRA does not present a defense to a criminal action for tax evasion.

### GEBAUER CASE (Washington)

On April 13, 2006, the federal government charged Raymond Gebauer with felony tax offenses in the United States District Court for the Western District of Washington, *United States of America v. Raymond Gebauer*, (Case No. CR–06–0122). Five months later, Stilley filed an application for leave to appear PHV on behalf of Gebauer. He did not mention having any disciplinary record. His application was returned September 29,2006, because he had not obtained the signature of Gebauer's local counsel. On November 16, 2006, Stilley filed another application for PHV admission and attached a 6 page summary of his disciplinary history along with 24 more pages of related material.

The court clerk wrote Stilley a 4 page letter on December 4, 2006, denying his application and setting out his reasons. On December 22, 2006, Stilley filed a 40 page appeal with the District Court. In it, he attempted to discredit his numerous sanctions. For example, at page 20 and 21 Stilley said:

> Oscar Stilley has paid the demanded price for the stated offenses, in sanctions up to and including a suspension. The petty nature of much of the charges, and the failure to punish vastly more egregious offenses by others, should cause other jurisdictions to not only question (the) seriousness of those particular charges, but also of the other charges made against Oscar Stilley.
>
> . . .

All these and other reasons call the Arkansas sanctions into question, but the most serious and legally compelling reason, for other courts, is the fact that the Arkansas Supreme Court Committee on Professional Conduct will not consider and decide legal questions raised before it.

Stilley asked the Washington Court to revisit the issues related to his disciplinary proceedings in Arkansas and to reach a different result. At page 28, he says:

> If in fact this Court decides that any Arkansas Disciplinary proceedings should be the subject of consideration by the court, Oscar Stilley respectfully requests that he be given specific authorization to provide the evidence and proof of why undersigned counsel says that the decision was not before a "competent tribunal" as that term is used in *Yamaha Motor Corp., U.S.A. v. Riney.*

The District Judge, on January 17, 2007, after setting out Stilley's "extensive and ongoing list of disciplinary matters" and particularly noting Stilley's continued pursuit of litigation long after the issues have been resolved, denied his appeal and PHV application.

### LOBELLO CASE (Nevada)

The federal government charged Nevada attorney, Mark A. Lobello, with 5 counts of tax evasion on November 14, 2006, in the United States District Court for the District of Nevada, *United States of America v. Mark A. Lobe* (Case No. 06–cr–376). On August 1, 2007, Stilley filed for PHV admission in the case. He appended to his petition a 9 page supplement in which he listed 9 "jurisdictions of practice for Oscar Stilley". He also set out a listing of his disciplinary cases and issues and, in some instances, attempted to justify his conduct. On August 2, 2007, he filed

a substitute attachment, saying that it was more current.

The government filed a motion on August 16, 2007, to disqualify Stilley from PHV status, citing 2 federal court decisions denying or disqualifying him from PHV privileges because of his long record of state bar disciplinary problems. It also advised that Stilley's six month suspension from the practice of law had been affirmed by the Arkansas Supreme Court on June 21, 2007 *Stilley v. Supreme Court Comm. on Prof'l Conduct,* (Case No. 06–972) and that his petition for rehearing was denied on September 6, 2007. (On September 13, 2007, the Arkansas Supreme Court stayed the enforcement of the suspension pending Stilley's Petition for Certiorari to the United States Supreme Court. That Court denied Certiorari on February 19, 2008, in Case No. 07–779, resulting in the imposition of the suspension on February 25, 2008).

On September 7, 2007, Stilley filed a response with 14 exhibits totaling 487 pages. On page 4, Stilley says:

> [The] exhibits [are] necessary to demonstrate that [the] Arkansas suspension was entered by an "incompetent" Court acting in defiance of due process.

On page 5 Stilley says:

> The purpose of supplying this information is not to ask the reader to read the entire set of exhibits, but rather to give the government a fair chance to rebut the statements in this response, if in fact they think that any factual statement is untrue.

Pages 7–17 reflects Stilley's views regarding his ethical difficulties together with citations which he says support his position.

At page 17 and 18 Stilley says:

> . . . This court's sole obligation is to inquire as to whether Oscar Stilley was accorded *a competent tribunal* acting in compliance with the *requirements of due process.*
>
> . . .
>
> There is no credible argument that Oscar Stilley obtained due process or a competent tribunal in the Arkansas case in which he was ordered suspended. The denial of due process and a competent tribunal have been persistent, egregious, long term, and impervious to the most respectful and plaintive pleas for the rights guaranteed by the Constitutions of the State of Arkansas and the United States. This Court should decline to give any credit whatsoever to the Arkansas suspension, and should admit Oscar Stilley *pro hac vice* in the captioned case forthwith.

After the government filed its reply on September 13, 2007, the District Magistrate Judge denied Stilley's petition by order dated October 11, 2007, finding that his "extensive record of ethical violations supports the conclusion that he is unwilling to abide by court rules and ethical guidelines." The Court also found that the State of Arkansas provided Stilley with sufficient due process.

Stilley appealed the Magistrate Judge's decision on October 25, 2007. Following the Government's response, the District Judge, by Order dated December 6, 2007, found that the Magistrate's decision was not clearly erroneous or contrary to law and denied Stilley's Motion for Review.

### STRUBLE V. FOUNTAIN (Mississippi)

On November 2, 2004, Stilley filed a Motion in the United States District Court for the Southern District of Mississippi to appear PHV on behalf of a number of plaintiffs in a case styled *Struble, et al., v. Fountain, et al.,* (Case No. 04–CV–814).

On January 24, 2005, an Order was entered granting his Motion for admission.

The defendants moved to revoke Stilley's admission on February 18, 2008, based upon the Arkansas Committee's December 27, 2007, Order of interim suspension as part of this proceeding (CPC No.2006–067). Stilley responded and advised the Court of his earlier suspension which became effective February 25, 2008. In addition, he sought a show cause hearing in conformity with local rules.

On April 22, 2008, the Court ordered Stilley to show cause why a reciprocal suspension was not warranted. Stilley filed a 28 page response on May 23, 2008, asking the Mississippi Court to rule on the merits of his suspension. He contended that the Arkansas Committee is not a governmental agency and therefore had no legal right to suspend his license; that charges against him were barred by the First Amendment; that the Arkansas Supreme Court violated his due process rights; that the Committee refused to consider and adjudicate his constitutional arguments; and that he was punished based upon the desire of the Arkansas Supreme Court Justices rather than upon any violation of any rule of law.

Stilley failed to disclose that his right to practice law in the United States District Court for the Eastern and Western Districts of Arkansas was suspended on May 1, 2008, by Order of District Judge Jimm Larry Hendren (Case No. 08–MC–008 WDA). He also failed to inform the Court that Judge Hendren had considered, analyzed and ruled against him on each issue he raised here, including his due process violation claim.

On June 3, 2008, the United States Magistrate Judge found that it was not the role of the Mississippi Court to determine the merits of the Arkansas proceedings and revoked Stilley's PHV status.

### DIRR CASE (Tennessee)

On April 1, 2008, the federal government filed criminal felony tax offenses against Brett and Renee Din' in the United States District Court for the Eastern District of Tennessee, *United States of America v. Brett Edward Din and Renee Dirr*, (Case No. 011–CR–42). Initially the Dirrs' represented themselves. On June 7, 2008, Stilley filed a motion for admission PHV declaring under penalties of perjury that he was "admitted and entitled to practice in the U.S. District Court for the Central District of Illinois". He failed to advise the Court that he was under two suspensions and facing disbarment proceedings in Arkansas.

On May 1, 2008, Judge Hendren entered his Order suspending Stilley from the practice of law in the Federal Courts in Arkansas. That same day, Stilley requested and was denied a letter of good standing by the clerk of the District Court for the Western District of Arkansas.

The government filed its response to Stilley's PHV motion on June 11, 2008, setting out Stilley's Arkansas suspensions, and advising that Stilley had been suspended or denied PHV admission in 5 federal district courts together with the 8th Circuit Court of Appeals. It also pointed out that 2 of the federal district court decisions had been affirmed on appeal.

At a hearing on Stilley's PHV motion on June 12, 2008, before the Honorable C. Clifford Shirley, United States Magistrate Judge, the transcript reflects at pages 2 and 3:

> THE COURT: All right. We are here again to consider Mr. Stilley's motion for admission *pro hac vice*. The Court notes that since the last hearing

Mr. Stilley emailed to my chambers nine documents. He entitled them Oscar Stilley's license. They appear, however, to the Court to in fact consist of one attorney's license, an Arkansas license to practice law issued by the Arkansas Supreme Court in 1991 and eight different admissions to practice in various federal courts. Is that correct, Mr. Stilley?

MR. STILLEY: If it please the Court, let me explain. It was sent by my personnel.

THE COURT: That isn't my question and you know it. You titled these Oscar Stilley's licenses.

You sent me one license and eight admissions to practice in various federal courts. Is that correct?

MR. STILLEY: Your honor, I would have to say that I sent you nine licenses. Let me explain this. Obviously the Arkansas license is suspended. I have told you that.

The Northern District of Oklahoma license has been suspended, although there is a show cause hearing or a show cause response pending in that district that has not been decided. Due to the way things are done there, the license there has been suspended.

The other licenses are licenses, as defined in Black's Law Dictionary and other legal dictionaries that define the term "license." It's a term of art and it means—

THE COURT: You then do not understand, do I take it, the difference in being licensed to practice law and being admitted to practice in a court?

MR. STILLEY: Your honor, I don't make a distinction there.

Page 5 of the transcript reflects:

THE COURT: Well, I am going to move on, but I will tell you that your inability to understand this basic principle of law practice probably in and of itself may make you unqualified to practice in this court. Either you are not being honest, or you really don't understand the difference.

Pages 25–27 of the transcript reflect:

THE COURT: You are a man without a law license.

MR. STILLEY: That is not true, your Honor. I have licenses and I sent you a number of licenses that are in good standing.

THE COURT: I am not going to argue with you about those again. They aren't licenses and they don't say licenses. The fact that you don't understand that is not my problem. You can hold up a legal pad and say that is a license, but it doesn't make it so.

. . .

You know what a law license is. If you don't, then I am not sure you are qualified to be in this Court anyway.

At the conclusion of the hearing, Judge Shirley announced from the bench that he was denying Stilley's Motion. In his Memorandum and Order, he found that Stilley was not in good standing in Arkansas, the only state in which he was licensed. He also found that Stilley was not entitled to practice in the federal court in the Central District of Illinois, the court in which he claimed good standing in his PHV application. In addition, the Judge noted that Stilley failed to self report his Arkansas suspension to the Illinois court clerk as required by their local rules. The Court continued at pages 4 and 5:

The Court further finds Mr. Stilley displayed less than proper candor required for both this Court and the Central Dis-

trict of Illinois in pursuing his letter of good standing, which in this Court's view, shows an apparent lack of respect for the courts, its officers, and its rules. Thus, the Court has serious concerns that Mr. Stilley would abide by this Court's rules or practices in his representation of the Dirrs. The Court is also concerned that Mr. Stilley continued to argue that despite the suspension of his Arkansas license, he was validly "licensed" in several other jurisdictions, but what he produced in support of that position were only admissions to practice in various federal courts, not law licenses. Despite this being pointed out to Mr. Stilley, he remained adamant that what he submitted to the Court were law licenses. As such, the Court is concerned either as to his knowledge and ability or his credibility in persisting in such argument.

Page 6 of the Opinion reflects:

Prior to the filing of Mr. Stilley's Motion (PHV) this Court as well as the government, were under the impression that the Dirrs were proceeding *Pro Se*. [*See* Doc 15] Yet, at the motion hearing, Mr. Stilley advised the Court that he assisted the Dirrs with their response to the government's motion *in limine* [Doc.26] Ms. Dirrs also advised the Court that she and her husband had retained Mr. Stilley as their attorney about a month prior to the June 9, 2008 hearing. The Court finds the late-filing of the motion a veiled attempt to not only prevent the government from objecting to his admission, but also to prevent the Court adequate time to discover his numerous ethical violations. Action such as this further shows Mr. Stilley's lack of appropriate legal understanding and competence in providing his clients with an effective advocate.

. . .

Thus, even if Mr. Stilley were admitted to the Eastern District of Tennessee, *pro hac vice*, he would be in immediate violation of practicing law without a valid license due to his suspension in Arkansas, which would ultimately lead to his suspension or disbarment in this court.

United States District Judge Thomas W. Phillips denied Stilley's Motion for Reconsideration.

### *MARSCHEWSKI DEPOSITION*

On September 12, 2007, Stilley had an opportunity to depose Judge Marschewski before the Supreme Court Committee on Professional Conduct. Excerpts from the transcript beginning on pages 13 through 15 reflect:

Q. (by Stilley). As you sit here today, do you recall being on a steering committee for the citizens for our University?

A. (by Judge Marschewski).Yes

Q. What was the purpose of the committee?

A. To the best of my recollection, Sandi Sanders called me sometime and asked me to be on that committee. That was—according to my research after you—after whatever you filed and I have looked at that—evidently was in June of 2001. The purpose of that committee as I understood it was to have the Westark, which was our community college, absorbed into the University of Arkansas so that it became a four-year university. I was in favor of that. I thought that it brought added opportunities, it brought added degrees, the ability to get degrees, to the college and I was in favor of that.

So I—obviously I told her that I would serve on the committee. I don't remember—I don't believe I ever attended a meeting of the committee. I don't—didn't talk to any of the committee members about the committee. I—only after I looked at what had been supplied years and years later did I even recall that it had to do with the one-cent sales tax and the elimination evidently of a five-mill increase or five-mills on the real estate taxes.

But I didn't meet with any of the people. And I believe that I got an invitation to come to some luncheon put on by the—Westark, and I had agreed to go to the luncheon. But I had court all day and did not get to go to the luncheon. I—well, I went, but it was after it was over. The only person I remember being there was Joel Stubblefield, and I don't remember what we talked about. I don't remember any of the discussions about it. I didn't-that was the only activity that I had with it.

Q. Was this a political committee?

A. Not—I don't know what you mean by "political Committee", Mr. Stilley.

Q. Well, the purpose of it was to raise some money to—to try to, in essence, change the law, correct?

A. That was not my understanding at all. I didn't—I didn't know there was a fund-raising aspect to it.

. . .

. . . that committee was formed in June of 2001. The election occurred in July of 2001. I mean, if—if they did some fund-raising, I didn't know anything about it. I didn't participate in it nor have 1 ever had any accounting about it. And that resolution passed. It—the vote passed, think, in July of 01. It was about 75 or 80 percent approval rating, and UA of Westark became part of the University of Arkansas.

At pages 37 and 38 the following is reflected:

Q. You were aware at the time you denied this motion to recuse that you had falsely stated that you were not working for—or—you were not on the committee for UAFS, correct?

A. That I had falsely stated. Mr. Stilley, you asked me in that hearing if I was on that committee. I told you to give me evidence that I was. You did not give me any evidence, and I didn't remember being on the committee. Somehow you equate that for me making a lie to you or falsely stating because I was mistaken.

If you had submitted any documentation during that hearing process, we could have aired that all out. But you didn't. You waited until after judgment was entered. I had no clue. I didn't remember being on this committee. I didn't remember anything about the committee. I didn't have anything to do with the facts of your case. And I made a judgment based upon what I thought was—was the right thing to do.

Now, I—I should not have said anything. But I didn't remember being on that committee. But, yes, I said you are—you were mistaken.

Q. Which was not the truth, correct?

A. It was not. I was mistaken.

Page 45 of the deposition reflects:

Q. . . . Would you agree on the basis of this that a court that has bias has a duty to step aside and let another—

A. I would agree with that 100%, Mr. Stilley. I had absolutely no bias towards you regarding this decision. I made it strictly on the law that I

thought was applicable and without any knowledge or any remembrance of this committee that I regretfully served on.

Q. Is it also regretful that you forgot that you served on it?

A. Yes, evidently it is.

Q. Was it also regretful that you didn't make any corrections with it when you—

A. I didn't think that was appropriate, Mr. Stilley. I think the judgment had been made. I had made my decision based upon that. You should have presented the evidence at the hearing. And then, as I said, I still— I don't think I would have recused. I didn't think there was a basis for recusal.

## TRANSCRIPT OF PROCEEDINGS BEFORE COMMITTEE

The 87 page Transcript of the public hearing conducted by Panel B on June 20, 2008, (hearing prompting amendment to petition) reflects that Stilley offered only 1 exhibit, a Motion to Dismiss. Ligon offered 15 exhibits, many of which are the same exhibits offered and received as evidence in this proceeding.

The transcript further reflects at pages 16 and 17 that Stilley advised the Panel's Chair that he believed that truthful statements were privileged under the first amendment, and further said "... I would like a ruling from the Chair of the panel that that's correct, that's a correct statement of the law". Page 25 reflects Stilley saying: "I've got another Motion to make. That is a Motion for a ruling that the Executive Director bears the burden of proof of falsity of any statements alleged to be punishable." Further down the page Judge Kelly responded: "... the Chair's

ruling is that the Chair is not going through whatever particular paragraphs you choose and give you an individual ruling on it. Your Motion to Dismiss and the Motion to Reconsideration, they are both denied".

Page 35 of the Transcript reflects that Ligon advised the Panel that his only live witness would be Stilley. Stilley stated that he had no witnesses.

Page 46 reveals that Ligon called Stilley to the witness stand but Stilley refused to testify saying: "Object on the grounds that the Judges have the prerogative to choose whether or not to testify and the Arkansas Constitution says that there will be no special privileges passed out to a certain group, then there is no basis for requiring Oscar Stilley to testify either."

Pages 85 and 86 reflect that the Panel unanimously found Rules violations and imposed sanctions.

## CONCLUSIONS OF LAW

The authority to regulate the practice of law arises from the Arkansas Constitution Amendments 28 and 80, and the power is an inherent power of the courts. *Ligon v. McCullough*, 2009 Ark. 165A, 303 S.W.3d 78 (2009); *In re Anderson*, 312 Ark. 447, 851 S.W.2d 408 (1993). Section 1(c) of the Procedures Regulating Professional Conduct provides that disciplinary proceedings are neither civil nor criminal in nature but are *sui generis*, meaning of their own kind. *Ligon v. Dunklin*, 368 Ark. 443, 247 S.W.3d 498 (2007).

Stilley does not challenge the accuracy of the numerous and voluminous exhibits forming the evidence, rather he contest their admissibility, refuses to recognize their precedent, and gives his own spin to what the exhibits reflect. He strongly criticizes Ligon's arguments and contends

that Ligon should be sanctioned by the Committee for making such contentions.

In his Motion for Directed Verdict or Judgment as a Matter of Law, Stilley basically contends that:

1. There is no evidence supporting the allegations against him.

2. There were no Committee findings except those represented by the first 26 counts so neither party should be required or permitted to brief any matter after Count 26.

3. Rule 3.2 does not apply to a lawyer who did not sign or file a pleading and does not include lawyers who help a *pro se* litigant.

4. The Court may not treat a technical legal term as if used in its ordinary sense, and then impute the worst possible motives to the accused.

5. Nothing in the disbarment petition alleges that any part of the Jones pleadings were false.

6. It is not permissible for a court to punish speech without an allegation of falsity.

7. Judge Marschewski was given an opportunity to show why his acts were not illegal or criminal.

8. Federal Rule of Procedure 11(b) does not extend sanctions to persons who do not advocate on behalf of a pleading, written motion, or other paper.

9. Judge Eisele denied him due process and "safe harbor" without case-law support.

10. The 8th Circuit Court of Appeals refused to meaningfully analyze and acknowledge his arguments and did not comply with due process.

11. The rule of law does not permit the Arkansas Supreme Court to make up rules as it goes along.

12. The Committee neglected and failed to make requested rulings on serious issues of law.

13. The Committee reached its decision in this case solely upon allegations without any supporting evidence.

Stilley demanded at the Panel B hearing, as he has in this proceeding, that he is entitled to a declaration that "truth is an absolute defense". The panel did not succumb to his demand and neither will the undersigned because he is asking for an advisory opinion, which is forbidden. *Terry v. White*, 374 Ark. 387, 391, 288 S.W.3d 199, 202 (2008); *Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). Court opinions are rendered upon a given set of facts developed in a case, not upon abstract statements. For example, truth can be a shield for an innocent defendant in a criminal case but it can also be a sword for the guilty. The role truth plays for Stilley in the instant case will be determined from the evidence adduced at trial and the applicable law.

By using the term "truth is an absolute defense" Stilley is urging the undersigned to find that he has truthfully proven that Judge Marschewski should have recused in *Parker v. Perry;* that had the judge recused, another judge would have reached a different result favorable to him; and, as a result, he would not have encountered his numerous ethical problems. There is absolutely no evidence or law to support such a finding.

The evidence reflects that Stilley offered no evidence to support his allegation in the court proceeding in which he says Judge Marschewski should have recused. The Supreme Court affirmed Judge Marschewski's decision finding that, with the facts presented in the case, the Judge applied

the applicable law. *Stilley v. Fort Smith School District*, 367 Ark. 193, 238 S.W.3d 902 (2006). There is no evidence in Marschewski's deposition or anywhere else in the record reflecting that the Judge actively participated in any activity which had anything to do with the *Parker* case. The results of the appeal clearly show that another judge could not have lawfully reached a different result.

▮ A judge is not required to recuse because of his or her life experiences. *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). In addition, there exists a presumption of impartiality and a party seeking recusal must demonstrate any alleged bias. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001).

This entire matter was put to rest in *Stilley v. Fort Smith School District* when the Supreme Court said at 367 Ark. at 203, 238 S.W.3d at 907–908:

> Stilley's motion {to recuse} was devoid of any facts supporting his assertion that Judge Marschewski should recuse. It raised no issue of fact or law to be considered in a hearing and was properly disposed of by summary denial. The circuit court did not abuse its discretion in denying Stilley's request for a hearing on the motion to recuse. There is no requirement that a hearing be held every time a litigant files a motion to recuse and asks for a hearing.

Stilley also contends that everything alleged in the Joneses lawsuits is true. Regretfully, he has failed to accept the decisions handed down in *Jones I*, and *Jones II*, Judge Eisele's decisions in the two federal cases, the 8th Circuit Court of Appeals decision, and decisions reached by numerous other courts in which Stilley has made the same allegations. He has no respect whatsoever for court decisions that are not decided in his favor.

Stilley's argument that Panel B did not base its June 20, 2008, findings on competent evidence is moot in light of *Ligon v. Walker*, 2009 Ark. 136, 297 S.W.3d 1 (2009). There, the Court held that the Executive Director may amend a petition to raise new matters, without first referring it to the Committee, provided that the amendment is filed in a timely fashion. Ligon filed his Amended Petition 6 months after filing his Original Petition and more than 5 months before trial. Stilley's due process rights were protected.

▮ Stilley alleges that Ligon is required to plead and prove that part or all of the Joneses pleading were false. He is wrong. Ligon's obligation is to prove the allegations set out in his Petition. *Davis v. U of A Med. Ctr. & Coll. Svc.*, 262 Ark. 587, 559 S.W.2d 159 (1977); *Williams v. Smart Chevrolet Co.*, 292 Ark. 376, 730 S.W.2d 479 (1987); *People v. Nowack*, 462 Mich. 392, 614 N.W.2d 78 (2000). As the Appellate Court of Illinois, Fourth District said in *Schleyhahn v. Cole*, 178 Ill.App.3d 111, 127 Ill.Dec. 307, 532 N.E.2d 1136 (1989), "Plaintiffs need not disprove every theory which defendant propounds".

As to Stilley's contention that Judge Eisele and the Eighth Circuit Court of Appeals violated his right to due process, he has cited no authority granting this Court jurisdiction to exercise appellate review of federal district and appellate court decisions.

Stilley has alleged many times that the Committee, along with Arkansas state and appellate courts, have denied him due process. Those arguments were put to rest by the United States District Court for the Western District of Arkansas, Fort Smith Division in a case styled *In Re: Oscar A. Stilley*, Civil No. 0841C0005 (May 21, 2005)

in which Judge Jimm Larry Hendren thoroughly reviewed Stilley's due process arguments and found them to be without merit. A similar decision was reached by the United States District Court for the Central District of Illinois, Peoria Division, *In Re: Oscar Amos Stilley*, Case No. 08–MC–2043 (November 19, 2008). There, a three judge panel, after reciting 10 pages filled with Stilley's ethical problems, reviewed and denied his claim of due process violations.

Based on the evidence and conclusions heretofore set out and the reasoning hereinafter set forth, Stilley's Motion for Directed Verdict or Judgment as a Matter of Law is without merit, should be and hereby is denied.

### COUNT 1

It is alleged in Count 1 that Stilley violated Model Rule 3.1 by assisting Robbie and Buck Jones, who had been his clients in a similar, if not identical, unsuccessful action in the state court, in preparing a Complaint that was filed in federal court as No. CIV04–220. It is alleged in the Jones complaint, among other claims, a "RICO" (Racketeer Influenced and Corrupt Organizations Act) violation, a claim Judge Eisele specifically found to be frivolous and his decision was affirmed on appeal by the 8th Circuit Court of Appeals.

Model Rule 3.1 provides, in relevant part, that a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

The evidence reflects that the complaint was prepared in Stilley's office on Stilley's computer and that Buck Jones considered Stilley to be his lawyer at the time of preparation. Further, Stilley acknowledged that he assisted Jones "materially in the preparation of the complaint". Considering all the proof, it is convincing that Stilley prepared the complaint, and that both Stilley and Jones knew that the Complaint was similar, if not identical to claims they had pursued unsuccessfully in State Court. *See, Jones I* and *Jones II*. Judge Eisele granted defense Motions to dismiss the complaint in its entirety. Stilley violated Model Rule 3.1 by preparing and causing Buck Jones to file the complaint he knew, or reasonably should have known, to be frivolous. *See, generally, Stilley v. University of Arkansas at Fort Smith, et al.*, where the Court said: "We have stated that an attorney is expected to know the law".

### COUNT 2

It is alleged in Count 2 that Stilley violated Model Rule 3.3(a)(1) in a hearing conducted on January 14, 2005, in Sebastian Circuit Court (case No. CIV–02–276), by demonstrating a lack of candor or even making a false statement with his response to the question "Did you prepare that complaint", (referring to the complaint filed by Buck and Robbie Jones as USDC case No. CV–04–2220).

Model Rule 3.3(a)(1) provides, in relevant part, that a lawyer shall not knowingly make a false statement of fact or law to a tribunal.

The evidence reflects that Stilley gave the following answers to the question "Did you prepare the Complaint" at issue:

"I assisted"

"I worked on it"

"I do not have personal knowledge" whether anyone else typed it.

"Buck and Robbie Jones" they're the signatories on that.

"that was typed on a computer I use"

"I did (typed) a lot of it"

"I assisted Mr. Jones materially in the preparation of that complaint"

When asked whether Buck or Robbie Jones typed any part of the complaint, Stilley responded: "Not to my knowledge". He also said, "I've provided attorney services to Buck Jones on an as-needed basis".

According to Buck Jones, Stilley was his lawyer when the complaint was prepared; the complaint was prepared at Stilley's office; Stilley did not discuss the complaint with him; and that Stilley didn't ask him to sign the documents, "He just gave them—handed them to me and I signed them and took them to the courthouse".

The proof is convincing that Stilley prepared the complaint in question then falsely, and in violation of Model Rule 3.3(a)(1), told the Court that he only assisted in its preparation.

### COUNT 3

It is alleged in Count 3 that Stilley violated Model Rule 3.4(c) by assisting his clients, the Joneses, in preparing a *pro se* Plaintiffs Complaint, which they filed on October 5, 2004, as USDC No. CV–04–2220 in the United States District Court for the Western District of Arkansas, containing language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, and accused them of not being a "competent tribunal" as that term is used by the Eighth Circuit Court of Appeals. Mr. Stilley's conduct constituted a breach of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The Attorney's Oath which Stilley swore to uphold when he was granted his license to practice law provides:

I will support the Constitution of the United States and the Constitution of the State of Arkansas, and I will faithfully perform the duties of attorney at law.

I will exhibit, and I will seek to maintain in others, the respect due courts and judges.

I will, to the best of my ability, abide by the Model Rules of Professional Conduct and any other standards of ethics proclaimed by the courts, and in doubtful cases I will attempt to abide by the spirit of those ethical rules and precepts of honor and fair play.

I will not reject, from any consideration personal to myself, the cause of the impoverished, the defenseless, or the oppressed.

I will endeavor always to advance the cause of justice and to defend and to keep inviolate the rights of all persons whose trust is conferred upon me as an attorney at law.

Model Rule 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

Stilley alleges that "It is understandable that a layperson might mistake the claim that a judicial officer is 'incompetent' for a mere personal insult. The term 'incompetent tribunal' was modified in this instance by the phrase 'as that term is used by the Eighth Circuit Court of Appeals'. Petitioner should not accuse another lawyer of disrespect when he has made a claim of incompetency based upon clear, unmistakable conflict of interest, as politely and respectfully as possible, in a legal pleading".

The record of this proceeding provides no factual support for Stilley's spurious claim of "incompetency". There is simply no indication in the record that any court in which Stilley has appeared as an attorney and/or litigant has acted incompetently.

Stilley made similar unsupported accusations in *United States of America v. Hamlet C. Bennett*, (USDC for District of Hawaii Case No. 06–68) 2006 WL 2793170. There, the District Judge said at page 11 of his opinion:

> The Court is further concerned by what appears to be a pattern of accusing judges, justices, and officers of the court of wrongful conduct without any basis. Not only was Stilley suspended by the Arkansas Supreme Court because of his intemperate and disrespectful conduct, but Stilley attempted to impugn the Government counsel by raising an unsupported charge of "judge shopping." Stilley also indicated that Magistrate Judge Koayashi was not "even handed" or "fair and impartial" in deciding this matter. Stilley's unsupported accusations of improper conduct by all who disagree with him gives this court concern about how he will behave in future court proceedings.

Considering Stilley's history of accusing judges, justices, lawyers and court officials of unsupported accusations of improper conduct merely because he does not agree with their decisions, leads the undersigned to find and conclude that Stilley violated Model Rule 3.4(c) by intentionally being disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, by accusing the Justices' and the Court of not being a "competent tribunal".

## COUNT 4

In Count 4 it is alleged that Stilley violated Model Rule 3.4(c) by assisting his clients, the Joneses, in preparing a *pro se* Plaintiff's Complaint which was filed on October 5, 2004, as USDC No. CV–04–2220 in the United States District Court for the Western District of Arkansas, containing language which Mr. Stilley Way prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, and accused them of being a Court that has "rendered it impossible for the Plaintiffs to obtain due process concerning the claims made herein, in any state court." Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

Stilley's accusation is nothing more than a disrespectful, caustic remark, that only serves to vent his emotions and is totally devoid of supporting evidence. He alleges that he can't be punished for his actions because he was "not put on notice" by written rules saying that disrespectful conduct sanctions can be applied in *appellate courts*. He disregards *White v. Priest*, 348 Ark. 783, 73 S.W.3d 572 (2002), and *Davenport v. Lee*, 349 Ark. 113, 76 S.W.3d 265 (2002) as precedent, saying that "the rule of law does not permit a tribunal to make up the rules as it goes along". Those cases certainly put Stilley and every other Arkansas lawyer on notice that disrespectful conduct directed at *any* judges will not be tolerated.

Stilley further alleges that an attorney's oath of office does not constitute an obligation for which, if violated, an attorney can be punished. He cites no authority for such a proposition.

Stilley's bold claim that the United States Supreme Court precludes

punishment for free speech is irrelevant because he has repeatedly failed to recognize and adhere to precedent holding that his speech (allegations) has not been true. *See In re Coe,* 903 S.W.2d 916, 917 (Mo. 1995), in which the Missouri Supreme Court said "An attorney's free speech rights do not authorize unnecessary resistance to an adverse ruling.... Once a judge rules, a zealous advocate complies, then challenges the ruling on appeal; the advocate has no free-speech right to reargue the issue, resist the ruling, or insult the judge". *See also, In re Shearin,* 765 A.2d 930 (Del.2000) and *United States v. Cooper (In re Zalkind),* 872 F.2d 1 (1st Cir.1989).

■ The First Amendment protection of free speech does not preclude an attorney from disciplinary action when he or she |₈₀engages in undignified and discourteous conduct degrading to a tribunal. *Board of Professional Responsibility v. Slavin,* 145 S.W.3d 538 (Tenn.2004); *In re Pyle,* 283 Kan. 807, 156 P.3d 1231 (Kan. 2007); *In re Converse,* 258 Neb. 159, 602 N.W.2d 500 (1999); *Konigsberg v. State Bar,* 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); *In re Martin–Trigona,* 55 Ill.2d 301, 302 N.E.2d 68 (1973); *In re Cobb,* 445 Mass. 452, 838 N.E.2d 1197 (2005).

Stilley's conduct as set out in Count 4 and supported by substantial evidence violated Model Rule 3.4(c).

### COUNT 5

■ It is alleged in Count 5 that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Plaintiff's Complaint which they filed on October 5, 2004, as USDC No. CV–04–2220 in the United States District Court for the Western District of Arkansas, containing language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, and accused them of "willfully and knowingly depriving the |₈₁plaintiffs of due process and a competent tribunal". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

Stilley's defense is that ghostwriting need not be disclosed; that a lawyer cannot be chargeable by statements unless there is some basis for attributing those statements to the lawyer; and that Ligon does not allege or prove the statements false.

The language is intemperate and contemptuous and was intended by Stilley to show disrespect for the Justices of the Arkansas Supreme Court individually and as a Court, in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 6

■ It is alleged in Count 6 that Mr. Stilley's conduct, violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Plaintiff's Complaint which they filed on October 5, 2004, as USDC No. CV–04–2220 in the United States District Court for the Western District of Arkansas, containing |₈₂language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, and accused them of "corruptly and fraudulently refusing to consider and fairly adjudicate said claim for the payment of the full amounts of the sale price of the plaintiffs'

home, motivated by passion and prejudice against counsel at that time retained by the Plaintiffs, one Oscar Stilley". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The language is intemperate and contemptuous, and was intended by Stilley to show disrespect for the Justices of the Supreme Court individually and as a Court, in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 7

It is alleged in Count 7 that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Plaintiffs Complaint which they filed on October 5, 2004, as USDC No. CV–042220 in the United States District Court for the Western District of Arkansas, containing language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, by alleging, "said Defendants [the justices] continued to sit on the case, and perverted judgment against the plaintiffs herein, depriving them of a competent tribunal and of an honest and impartial arbiter of the dispute". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The language is intemperate and contemptuous, and was intended by Stilley to show disrespect for the Justices of the Arkansas Supreme Court individually and as a Court, in violation of Model Rule

3.4(c). The rationale set out in the undersigned's conclusions under Count 3 and 4 apply here.

### COUNT 8

It is alleged in Count 8 that Mr. Stilley's conduct, violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Plaintiff's Complaint which they filed on October 5, 2004, as USDC No. CV–04–2220 in the United States District Court for the Western District of Arkansas, containing language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the Justices of the Arkansas Supreme Court individually and as a Court, and sought compensatory and punitive damages against the individual Justices "for having willfully and knowingly deprived Plaintiffs of due process and a competent tribunal in the cases stated in the body of the complaint". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The frivolous allegations are intemperate and contemptuous, and were intended by Stilley to show disrespect for the Justices of the Arkansas Supreme Court individually and as a Court, in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 9

In Count 9 it is alleged that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses in preparing a *pro se* Brief in Support of Plaintiffs' Response to the various Motions to Dismiss or for Summary Judgment, which they filed on or about January 11, 2005, in CIV–04–2220 in the United States

District Court for the Western District of Arkansas. The Brief contained language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the trial court, the Honorable James Marschewski, by accusing him of "presiding over a case involving Westark College (now UAFS) despite a clear conflict of interest", apparently *Parker v. Perry*. Mr. Stilley's conduct constituted a breach of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The frivolous allegation is intemperate and contemptuous and was intended by Stilley to show disrespect for Judge Marschewski in violation of Rule 3.4(c). The rationale set out in the undersigned's conclusions under Count 3 and 4 apply here.

### COUNT 10

It is alleged in Count 10 that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Brief in Support of Plaintiffs' Response to the various Motions to Dismiss or for Summary Judgment which were filed on or about January 11, 2005, in CIV–04–2220, in the United States District Court for the Western District of Arkansas. The Brief contained language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the trial court, the Honorable James Marschewski, where it accused him of having "demonstrated a total disregard of judicial ethics". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the obligation of his oath of office as an attorney at law due to his

general tone of disrespect for the attorney code of ethics.

The frivolous allegation is intemperate and contemptuous and was intended by Stilley to show disrespect for Judge Marschewski in violation of Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 11

It is alleged in Count 11 that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Brief in Support of Plaintiffs' Response to the various Motions to Dismiss or for Summary Judgment which they filed on or about January 11, 2005, in CIV–04–2220 in the United States District Court for the Western District of Arkansas. The Brief contained language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the trial court, the Honorable James Marschewski, where it accused him of "knowingly and willfully entering an illegal order against Oscar Stilley". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The frivolous allegation is intemperate and contemptuous, and was intended to show disrespect for Judge Marschewski in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Count 3 and 4 apply here.

### COUNT 12

In Count 12 it is alleged that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Brief in Support of Plaintiffs' Response to the various Motions to Dismiss or for Summary Judgment which they filed on or about January 11,

2005, in CIV–04–2220 in the United States District Court for the Western District of Arkansas. The Brief contained language which Mr. Stilley either prepared, or ratified, that was clearly intemperate, contemptuous, and disrespectful of the trial court, the Honorable James Marschewski, where it accused him of having "failed to disclose material facts showing a conflict of interest". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of ethics.

The allegation is frivolous, intemperate and was intended by Willey to show disrespect for Judge Marschewski in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 13

It is alleged in Count 13 that Mr. Stilley's conduct violated Model Rule 3.4(c) in that he assisted his clients, the Joneses, in preparing a *pro se* Brief in Support of Plaintiffs' Response to the various Motions to Dismiss or for Summary Judgment which they filed on or about January 11, 2005, in CIV–04–2220 in the United States District Court for the Western District of Arkansas. The Brief contained language that was clearly intemperate, contemptuous, and disrespectful of the trial court, the Honorable James Marschewski, where it accused him of having been "UAFS's semi-secret special agent Marschewski engaged to fight their battles for them". Mr. Stilley's conduct constituted a breach of the obligation of his oath of office as an attorney at law, due to his general tone of disrespect for the attorney code of conduct.

The frivolous allegation is intemperate, strident, and contemptuous and was intended by Stilley to show disrespect for Judge Marschewski in violation of Model Rule 3.4(c). The rationale set out in the undersigned's conclusions under Counts 3 and 4 apply here.

### COUNT 14

It is alleged in Count 14 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that by his letter of October 26, 2004, Mr. Staley threatened Judge James Marschewski with criminal prosecution if he did not rule in a certain manner or take certain action requested by Stilley in Sebastian Circuit Court No. CV–2002–276, *Parker v. Perry*. When Judge Marschewski failed to act as Mr. Stilley demanded, on November 10, 2004, Mr. Stilley caused a document entitled "Warrant information", apparently obtained from the Sebastian County Prosecuting Attorney's Office, to be filled out against Judge Marschewski, and others, to be transmitted to the Judge by means of the Motion Mr. Stilley filed on November 19, 2004. Mr. Stilley attempted to use criminal process to coerce a favorable result in a civil court action in which he had an interest, a misuse of the court system and the criminal justice system.

Model Rule 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

Stilley's defense is that he "offered Judge Marschewski an opportunity to show why his acts were not illegal or criminal, such as to require the Respondent (Stilley) to make a report to the proper authorities". As a lawyer, Stilley knew, or reasonably should have known, that the Judge's act of enforcing his Order was not a criminal act. He also knew, or reasonably should have known, that there was nothing illegal to report to the proper authorities.

Stilley also contends that Judge Marschewski's decision was wrong and infers that he was not required to obey the order.

Stilley's unsupported accusation against Judge Marschewski was not an "innocent explanation" but a threat of criminal prosecution if the judge did not take action favorable to him, and it was a clear violation of Model Rule 8.4(d).

### COUNT 15

It is alleged in Count 15 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that by his letter of October 26, 2004, he threatened Judge Marschewski with the filing of a complaint against the Judge with "the judicial authorities" presumably the Arkansas Judicial Discipline Commission, if he did not take certain action requested by Mr. Stilley, or decline to take action unfavorable to Stilley, in Sebastian Circuit No. CV–2002–276, *Parker v. Perry.* Judge Marschewski promptly sent the letter to the Arkansas Judicial Discipline and Disability Commission, as a self-report, which, on information and belief, did not result in any charges or action against the judge. Mr. Stilley attempted to use the judicial disciplinary system to coerce a favorable result in a civil action in which he had an interest, a misuse of the judicial discipline system, and prejudicial to the administration of justice.

Stilley's defense is that Ligon cites no specific language in support of this allegation and that there is no legal basis for the Court to punish him based on theories that were concealed from him.

The evidence reflects that Stilley began his letter by telling Judge Marschewski that he was facing contempt proceedings in the judge's court. Then he attempted to plead his defense in the cause. Next he reminded the judge that he did not prevail in the Judge's court the last time he used that defense. The only logical reason for the letter was to attempt to coerce Judge Marschewski into reversing his prior decision in the upcoming hearing, which is clearly a violation of Model Rule 8.4(d).

### COUNT 16

It is alleged in Count 16 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that he followed through on his October 26, 2004, threat to Judge Marschewski with the filing of a complaint against the Judge with the Committee on Professional Conduct in an attempt to use the judicial discipline system to coerce a favorable result in a civil court action in which he had an interest, which was a misuse of the judicial discipline system, and was prejudicial to the administration of justice.

Stilley's defense is that the charge fails to identify the specific language relied upon and that Ligon failed to meet his burden of proof.

The undersigned finds and concludes that Stilley knew, or reasonably should have known, that the mere failure of a judge to accept his argument is no basis for him to file a complaint with the attorney or judicial discipline system. His conduct was reckless and mean spirited.

The evidence is convincing that Stilley filed his complaint against Judge Marschewski for the sole purpose of attempting to coerce the Judge into reversing his prior decision, which is a violation of Rule 8.4(d).

### COUNT 17

In Count 17 it is alleged that Mr. Stilley's conduct violated Model Rule 8.4(d) in that by his letter of October 2612004, he threatened attorney Walton Maurras with the filing of a grievance against him with

the Committee on Professional Conduct if he did not back off prosecuting a motion to show cause for contempt against Mr. Stilley in Sebastian Circuit No. CV–2002–276, *Parker v. Perry.* When Mr. Maurras failed to act as Mr. Stilley demanded, on or about November 19, 2004, Mr. Stilley filed a grievance against him with the Committee. Mr. Stilley attempted to use the attorney discipline system to coerce a favorable result in a civil court action in which he had an interest, a misuse of the attorney discipline system, and prejudicial to the administration of justice.

Stilley's defense is that he has not been informed of the precise nature of the charge.

Maurras considered the letter a threat when he responded to Stilley by saying: "I'm disappointed in you. Threats of grievance complaints won't work. You do what you think is in your best interest and we'll see what happens".

The only logical explanation for Stilley writing such a letter to Maurras was to attempt to cause him to back away from pursuing his contempt petition. Such conduct was a clear violation of Rule 8.4(d).

### COUNT 18

It is alleged in Count 18 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that by his letter of October 26, 2004, he threatened attorney James M. Llewellyn, Jr., with the filing of a grievance against him with the Committee on Professional Conduct if Mr. Llewellyn did not back off prosecuting a motion to show cause for contempt against Mr. Stilley in Sebastian Circuit No. CV–2002–276, *Parker v. Perry.* When Llewellyn failed to act as Stilley demanded, on or about November 19, 2004, Stilley filed a grievance

against him with the Committee. Mr. Stilley attempted to use the attorney disciplinary system to coerce a favorable result in a civil court action in which he had an interest, a misuse of the attorney discipline system, and prejudicial to the administration of justice.

Stilley's defense is that he has not been informed of the precise nature of the charge and, further, that his communication was privileged and confidential. His citations are not in point.

He also alleges here that "The proper role of a special judge is to rule on competing arguments made by the parties". Obviously he overlooks the Per Curiam appointing the undersigned wherein the Court said: "As provided in Section 13(A), the special judge shall hear all evidence relevant to the alleged misconduct and then make findings of fact, conclusions of law, and recommendations of an appropriate sanction . . ."

Attorney arguments are not evidence but are made only to help judges or juries understand the evidence and the applicable law. See, Arkansas Model Jury Instructions, 101. Arguments of attorneys which have no basis in the record are disregarded. Judges make decisions after sifting through the evidence, finding the facts, and applying the applicable law.

The allegation in this Count is supported by the evidence in the record; it is not privileged and is not confidential. Stilley's conduct violated Rule 8.4(d).

### COUNT 19

It is alleged in Count 19 that Mr. Stilley's conduct violated Model Rule 8.4(d) because in *Parker v. Perry,* Sebastian Circuit No. CV–2002–276, Judge Marschewski sanctioned Mr. Stilley in September 2002, for violating Rule 11 by filing a lawsuit that was barred by the principles of *res*

*Judicata,* the statute of limitations, and the voluntary payment rule. He assessed sanctions against Stilley by directing that he pay fees incurred by the Fort Smith School District ($14,421.16) and the University of Arkansas at Fort Smith ($2,196.81). By Judgment issued January 18, 2005, Judge Marschewski found Mr. Stilley in civil contempt and sentenced him to jail and fined him (suspended on conditions), after finding that he had failed to comply with the September 2002, Order.

██ The record reflects that the allegations are true. Stilley alleges that the Sebastian County Circuit Court and the Arkansas Supreme Court were wrong in their rulings; therefore this Court should not respect their decisions. Those decisions became final long ago and the matters resolved therein cannot be relitigated here. Stilley's conduct violated Rule 8.4(d).

### COUNT 20

It is alleged on Count 20 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that he violated Rule 11, ARCP, by filing a lawsuit barred by several legal doctrines. He assisted the Joneses in filing *pro se,* a subsequent lawsuit in federal court in October, 2004, *Jones v. Double "D" Properties, et al.,* which was exactly the same cause of action that resulted in Mr. Stilley being sanctioned by Judge Marschewski in September, 2002.

██ The allegation is supported by proof. Stilley's defense is that the charge is not specific enough to allow an adequate defense; that he cannot be sanctioned if he did not sign or file the pleading; that the causes of action were not the same; and that the Joneses were not bound by the previous lawsuit. The undersigned finds that the allegation is specific and that the Joneses were bound by the previous law-

suit as found by Judge Eisele. Stilley cites no authority for his allegation that a lawyer cannot be sanctioned unless he actually signs or files a frivolous pleading. Model Rule 3.1 does not use the words "signed" or "filed". It says that "... a lawyer shall not bring or defend a proceeding, or assert or controvert an issue ...". The undersigned finds and concludes that Stilley "brought and asserted" the cause of action at issue and that his conduct violated Model Rule 8.4(d).

### COUNT 21

In Count 21 it is alleged that Mr. Stilley's conduct violated Model Rule 8.4(d) in that his failure to comply with the order for sanctions caused the Circuit Court of Sebastian County to have to expend unnecessary and limited time and resources on matters he caused or assisted to occur.

██ The record reflects that this allegation is true. Stilley's defense is that this Court should not respect the Orders of the Sebastian County Circuit Court. Those Orders are final and binding and cannot be relitigated. Stilley's conduct violated Model Rule 8.4(d).

### COUNT 22

It is alleged in Count 22 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that on October 19, 2004, he filed suit personally against Judge Marschewski, Justices Robert Brown, Tom Glaze, Donald Corbin, Annabelle Clinton Imber, Jim Hannah and Ray Thornton, in their official and individual capacities, and others, in Case No. CIV–042225 in the United States District Court for the Western District of Arkansas. The case was eventually the subject of a Memorandum Opinion and an Order of Dismissal by Judge G. Thomas Eisele filed May 18, 2005. His Opinion and Dismissal was affirmed on May 26, 2006, by the Court of Appeals for the

Eighth Circuit (No. 05–2816). Judge Eisele particularly found that the "RICO" claim the Joneses and Mr. Stilley alleged was disturbing and frivolous. Judge Eisele sanctioned Mr. Stilley for his conduct by striking the RICO claim from the Amended Complaint. He also assessed costs and UAFS's attorney fees (determined after further pleadings) against Mr. Stilley. Judge Eisele further referred the matter and Mr. Stilley's conduct to the Committee on Professional Conduct and directed the clerks of both federal districts in Arkansas not to accept for filing any complaint tendered by Mr. Stilley naming as parties any of at least twenty-nine (29) individuals or entities identified in an exhibit attached to his Opinion. His decision was affirmed on appeal. Mr. Stilley's conduct and frivolous claim in this matter resulted in the unnecessary use of court, party and attorney time and resources, conduct that was prejudicial to the administration of justice.

The evidence adduced at trial fully supports the allegation. Stilley's defense is that he did not receive a show cause order in the case, therefore this court should nullify Judge Eisele's decision. He either raised that issue, or should have raised that issue before Judge Eisele, not here. Judge Eisele's decision is final and binding and Stilley must respect it. Stilley's conduct violated Model Rule 8.4(d).

### COUNT 23

It is alleged in Count 23 that Mr. Stilley's conduct violated Model Rule 8.4(d) in that on October 19, 2004, he filed suit personally against Judge Marschewski, the University of Arkansas at Fort Smith (UAFS), and others, as No. CV–04–2225 in United States District Court for the Western District of Arkansas. This case was eventually the subject of a Memorandum Opinion and Order of Dismissal by Judge G. Thomas Eisele filed May 18, 2005. His Opinion and Dismissal was affirmed by the Court of Appeals for the Eighth Circuit (No. 05–2816) on May 26, 2006. Judge Eisele found that Mr. Stilley challenged Judge Marschewski's award of sanctions against Mr. Stilley in the earlier state court version of the *Jones* litigation and lost on appeal. Judge Eisele found that Mr. Stilley then filed the federal suit, contending that UAFS breached federal law, both statutory and constitutional, when it attempted to collect the state court judgment. Judge Eisele further found that Mr. Stilley sued UAFS "for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" to UAFS, in violation of Fed.R.Civ.P. Rule 11(b)(1). The decision was affirmed on appeal. Mr. Stilley's conduct and improper purpose in this matter resulted in the unnecessary use of court, party, and attorney time, money, and resources, conduct that is prejudicial to the administration of justice.

The allegations are true as reflected in the record. Stilley's argument is that Judge Eisele and the 8th Circuit denied him due process. He also alleges that Judge Marschewski should have recused in *Parker v. Perry*; that if he had done so and another judge had been appointed, the new judge would have found in his favor, which would have resulted in his not facing ethical problems. He further complains that he has been denied the right to depose his accusers. Those issues were resolved against him long ago and he must accept the various courts' rulings. His conduct violated Model Rule 8.4(d).

### COUNT 24

In Count 24 it is alleged that Mr. Stilley's conduct violated Rule 3.4(c) because

in direct defiance of Judge Tabor's directives from the bench at the hearing on March 14, 2007, Mr. Stilley had subpoenas and deposition notices issued on March 15, 2007, to compel certain witnesses, including Judge Marschewski, to attend depositions to be conducted by Mr. Stilley for the purpose of attempting to relitigate issues already settled in the appeal in *Parker v. Perry*. Such action had no substantial purpose other than to burden those third persons who were subpoenaed, including Dr. Beran, Judge Marschewski, Judge Jim Spears, Mayor Ray Baker and Sam Sicard.

█ Stilley contends that there is no proof to support the allegation. The evidence reflects otherwise. Stilley's conduct violated Model Rule No. 3.4(c).

## COUNT 25

It is alleged in Count 25 that Stilley's conduct violated Rule 4.4(a) because in direct defiance of Judge Tabor's directive from the bench at the hearing on March 14, 2007, Mr. Stilley had subpoenas and deposition notices issued on March 15, 2007, to compel certain witnesses, including Judge Marschewski, to attend depositions to be conducted by Stilley for the purpose of attempting to relitigate issues already settled in the appeal in *Parker v. Perry*. The action had no substantial purpose other than to burden those third persons who were subpoenaed, including Dr. Beran, Judge Marschewski, Judge Jim Spears, Mayor Ray Baker, and Sam Sicard. These persons were required to obtain counsel and file motions to quash the subpoenas.

Model Rule 4.4(a) provides that in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

█ The evidence supports the accusation. Stilley's conduct violated Model Rule 4.4(a).

## COUNT 26

It is alleged in Count 26 that Mr. Stilley's conduct violated Rule 8.4(d) because in a hearing on March 14, 2007, Mr. Stilley stated that he intended to put on witnesses "who will testify that Judge Marschewski lied when he said he was not represent . . . [cut off by court]". By this statement, Mr. Stilley engaged in conduct that is prejudicial to the administration of justice by accusing a judge of lying in a legal proceeding, and especially where the same allegation was part of the issues on appeal in a case styled *Stilley v. Fort Smith School District, et al.*, that had been decided adversely to Mr. Stilley on September 14, 2006.

Stilley's defense is that Ligon does not allege that his statement was material to the proceedings and that Ligon has made no attempt to prove the statement false. He also alleges that there is no evidence to support the allegation and that Ligon has cited no legal authority supporting his position.

█ The evidence reflects that the allegation is true. The record does not support Stilley's bare allegation that Judge Marschewski "lied". Ligon is not required to disprove every defense theory Stilley puts forth. *Schleyhahn v. Cole*, 178 Ill. App.3d 111, 127 Ill.Dec. 307, 532 N.E.2d 1136 (1989). Stilley's conduct violated Model Rule 8.4(d).

## COUNT 27

It is alleged in Count 27 that Arkansas is the only state to have granted Oscar Stilley a license to practice law. On April

21, 2006, at the conclusion of a public hearing in case No. CPC 2002–077, Panel B announced a decision to suspend Mr. Stilley's Arkansas law license for six months. On May 4, 2006, an Order from Committee Panel B in CPC 2002–077 was filed of record, and provided to Mr. Stilley, informing him of a six month suspension of his Arkansas law license. This suspension order was stayed while he appealed to the Arkansas Supreme Court. On July 14, 2006, Mr. Stilley filed a motion for admission *pro hac vice* in the case of *USA v. Hamlet Bennett,* No. 06–cr–68 in the United States District Court of Hawaii. In his motion, Mr. Stilley failed to set out any information about his Arkansas law license disciplinary history to that date. He also answered Question 6 in his application, under oath, as follows, "I am not currently suspended or disbarred in any court". By his response and omission, Mr. Stilley knowingly made a false statement of fact to a tribunal for the purpose of obtaining admission *pro hac vice* in the *Bennett* case.

Model Rule 3.3(a)(1) provides that A lawyer shall not knowingly make a false statement of fact or law to a tribunal; or to fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

Stilley's defense is that he is "licensed" in a number of federal bars; that he was not suspended at the time of application; that his certificate of good standing was readily available from the Arkansas Supreme Court Clerk; that Leslie Steen, Clerk of Court, would testify that Oscar Stilley was not "currently suspended" and that a certificate of good standing would have been available as a matter of course at the time he filed his sworn statement with the Hawaiian federal district Court. His arguments are not supported by the record.

The evidence reflects that in Stilley's application for admission PHV, he stated under oath that "I am not currently suspended or disbarred in any court". An Order was entered granting him PHV status. After the United States Attorney brought Stilley's Arkansas suspension to the Court's attention, the U.S. Magistrate Judge (after hearing) disqualified Stilley, finding that even though the suspension was stayed pending appeal, Stilley should have disclosed such information when he submitted his application for admission. The court noted that the staying of a suspension pending appeal does not equate with Stilley being in "good standing". The court further found that Stilley's insistence that he was still in good standing despite the suspension order was, "more than merely troubling". The District Judge affirmed the Magistrate's Order.

Stilley knew he was not "licensed" to practice in any "federal bars" and that his only "law license" was suspended when he prepared and filed his application. As a lawyer, he knew or should have known, that he was not in "good standing" in Arkansas. His conduct violated Model Rule 3.3(a)(1) because he knowingly made a false statement to the Hawaii District Court.

### COUNT 28

It is alleged in Count 28 that Arkansas is the only state to have granted Oscar Stilley a license to practice law. On April 21, 2006, at the conclusion of a public hearing in Case No. CPC 2002–077, Panel B announced a decision to suspend Mr. Stilley's Arkansas law license for six months. On May 4, 2006, an Order from Committee Panel B, in CPC 2002–077, was filed of record, and provided to Mr. Stilley, informing him of a six month suspension of his Arkansas law license. This suspension order was stayed while he appealed to the

Arkansas Supreme Court. On July 14, 2006, Mr. Stilley filed a motion for admission *pro hac vice* in *USA v. Hamlet Bennett*, No. 06–cr–68, in the United States District Court of Hawaii. In his motion, Mr. Stilley failed to set out any information about his Arkansas law license disciplinary history to that date. He also answered Question 6 in his application, under oath, as follows, "I am not currently suspended or disbarred in any court". Mr. Stilley failed to correct his false statement of material fact to the tribunal, and the true facts were only revealed when the United States of America filed a Motion to Disqualify Oscar Stilley on August 11, 2006, in the *Bennett* case.

Stilley's defense is basically the same as that offered to Count 27, and is not supported by the record.

▉ The evidence fully supports the allegations set forth in Count 28. Stilley's conduct was in violation of Model Rule 3.3(a)(1).

### COUNT 29

In Count 29 it is alleged that on September 29, 2006, when Mr. Stilley applied for admission *pro hac vice* in *USA v. Gebauer*, USDC (WA) No. 06–cr–122, he provided that court with an eight page detailed summary of his Arkansas law license disciplinary matters and sanctions. On August 1, 2007, when Stilley applied for admission *pro hac vice* in *USA v. Lobello*, USDC (NV) No. 06–cr–376, he twice provided that court with an eight page detailed summary of his law license disciplinary matters and sanctions. On June 9, 2008, when Mr. Stilley applied for admission *pro hac vice* in *USA v. Dirr*, USDC (TN) No. 08–cr–42, he failed to provide that court with any negative information about his Arkansas state and federal law disciplinary matters and sanctions. He knew at the

time that he had been placed on state interim suspension on December 27, 2007; that State disbarment proceedings had been filed against him on January 16, 2008; that the federal courts in Arkansas had suspended him from practicing there on May 2, 2008; and that the Eighth Circuit Court of Appeals had suspended him from practicing there on May 2, 2008. His practice status representations to the *Dirr* court, directly and by knowing omission of material facts, constitute false statements of fact to the *Dirr* tribunal.

Stilley's defense is that omission of facts not requested cannot be summarily deemed false statements. His argument is not supported by authority.

▉ Every word of the lengthy allegation set out in Count 29 is supported by the record. Stilley's conduct violated Model Rule 3.3(a)(1).

### COUNT 30

It is alleged in Count 30 that Arkansas is the only state to have granted Oscar Stilley a license to practice law. On April 21, 2006, at the conclusion of a public hearing in Case No. CPC 2002–077, Panel B announced a decision to suspend Mr. Stilley's Arkansas law license for six months. On May 4, 2006, an Order from Committee Panel B in CPC 2002–077 was filed of record, and provided to Mr. Stilley, informing him of a six months suspension of his Arkansas law license. This suspension order was stayed while he appealed to the Arkansas Supreme Court. On July 14, 2006, Mr. Stilley filed a motion for admission *pro hac vice* in the case of *USA v. Hamlet Bennett*, No. 06–cr–68 in the United States District Court of Hawaii. In his motion, Mr. Stilley failed to set out any information about his Arkansas law license disciplinary history to that date. He also answered Question 6 in his application, under oath, as follows: "I am not currently

suspended or disbarred in any court". By his responses and omissions, Mr. Stilley knowingly engaged in conduct involving dishonesty, fraud, deceit or misrepresentation for the purpose of obtaining admission *pro hac vice* in the *Bennett* case.

Model Rule 8.4(c) provides that It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Stilley's defense is that Ligon is doubling up on him and that Ligon "has cited no authority for the proposition that complete and candid responses on an official government information request form constitutes dishonesty, fraud, deceit or misrepresentation. His argument is not supported by evidence or law.

The allegation set out in Count 30 is fully supported by the record. By his conduct Stilley violated Model Rule 8.4(c).

### COUNT 31

It is alleged in Count 31 that on or about September 29, 2006, when Mr. Stilley applied for admission *pro hac vice* in *USA v. Gebauer,* USDC (WA) No 06–cr–122, he provided that court with an eight page detailed summary of his Arkansas law license disciplinary matters and sanctions. On August 1, 2007, when Mr. Stilley applied for admission *pro hac vice* in *USA v. Lobello,* USDC (NV) No. 06–cr–376, he twice provided that court with an eight page detailed summary of his Arkansas law license disciplinary matters and sanctions. On June 9, 2008, when Mr. Stilley applied for admission *pro hac vice* in *USA v. Dirr,* USDC (TN) No. 08–cr–42, he failed to provide that court with any negative information about his Arkansas state and federal disciplinary matters and sanctions. He knew at the time that he had been placed on state interim suspension on

December 27, 2007; that state disbarment proceedings had been filed against him on January 16, 2008; that the federal courts in Arkansas had suspended him from practicing there on May 1, 2008; and that the Eighth Circuit Court of Appeals had suspended him from practicing there on May 2, 2008. By his practice status representations to the *Dirr* court, directly and by knowing omissions of material fact, Mr. Stilley engaged in conduct involving dishonest, fraud, deceit or misrepresentation to the *Dirr* court.

Stilley's defense is that Ligon is tripling up on him; that nothing in the facts indicates a "positive falsehood"; and that Ligon has no evidence or authority for his theories. Stilley is mistaken.

The allegation set out in Count 31 is sustained by proof. By his conduct, Stilley violated Model Rule 8.4(c).

### COUNT 32

It is alleged in Count 32 that by repeated attempts to relitigate his Arkansas state license and discipline issues and charges in federal courts in Michigan, Arizona, Hawaii, Tennessee, Washington, Nevada, and Mississippi, Mr. Stilley has wasted the time and resources of those courts that could otherwise be put to use on other cases and business of those courts, conduct prejudicial to the administration of justice in those courts.

Model Rule No. 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

Stilley's license was suspended for six months on May 4, 2006. The Arkansas Supreme Court affirmed the suspension on June 21, 2007, and denied rehearing on September 6, 2007. Stilley's petition for *certiorari* to the United States Supreme Court was denied February 19, 2008. The

suspension became effective February 26, 2008.

Stilley contends that, "the suspensions of Respondent have been the product of serious violations of constitutional guarantees including but not limited to due process"; that Ligon did not allege or prove that Stilley's challenges were made without a good faith basis; that Ligon did not allege or prove that the Arkansas suspensions were taken and had in compliance with due process; and that Ligon is seeking Stilley's disbarment "for attempting to expose constitutional violations in Arkansas courts".

Stilley also says at page 21 of his second Motion that he (Stilley) "is still counsel in a case in the Northern District of Illinois and an appeal from the same case in the 7th circuit." He also says further down the same page:

> This case will resonate for many years, but never so loudly as it does by exposing a lawyer to disbarment for seeking recourse to the law, in good faith.

Stilley has continuously refused to recognize court decisions, particularly Arkansas decisions, settling the issues raised therein. If he disagrees with a ruling, he simply goes to another court, or judge, and asks that the matter be relitigated, under the pretence that his due process rights were violated the last time around. Judge, after judge, in state after state, has pointed out to him the error of his ways. Unfortunately, he has not heeded the decision and reasoning of a single judge. By his actions he has wasted a substantial amount time of numerous court officials, lawyers and parties. Such conduct violated Model Rule 8.4(d).

### SANCTION HEARING

During the first week in April, 2009, the undersigned permitted Ligon to offer, without objection, a recent Oklahoma court decision involving Stilley as additional evidence in this case. After the case was received, the parties were advised that the offer, while relevant to sanctions, would not be considered in this phase of the proceedings because it did not directly relate to one of the counts at issue. On April 6, 2009, the undersigned advised Stilley by e-mail that he would be afforded the same opportunity, and that if he wanted to offer any additional proof, to advise immediately. Stilley responded the same day saying, ... "I have no proof to offer and see the need for none at this specific stage of the proceedings".

Pursuant to Section 13 of the Procedures, the undersigned will hear all evidence relevant to an appropriate sanction to be imposed, including evidence related to the factors listed in Section 19 and the aggravating and mitigating factors set out in the American Bar Association's Model Standards for imposing Lawyer sanctions, Sec's. 9.22 and 9.32 (1992), beginning at 9:00 a.m., Thursday, May 21, 2009, in Little Rock, Arkansas, at a place designated by Larry Brady, Court Services Director for the Administrative Office of the Courts. Dated this 22 day of April, 2009.